**John LEAHY and Benjamin Mollica, Plaintiffs,**

v.

**FEDERAL EXPRESS CORPORATION, Defendant.**

**No. CV–83–4031 (JBW).**

United States District Court, E.D. New York.

May 9, 1985.

---

Noah A. Kinigstein, New York City, for plaintiffs.

Chadbourne, Parke, Whiteside & Wolff, New York City (Charles K. O'Neill and Melissa A. Young, New York City, of counsel), for defendant.

*Opinion and Order*

MALETZ, Senior Judge.[*]

Plaintiffs John Leahy and Benjamin Mollica commenced this action in the Supreme Court of the State of New York, County of Queens, and defendant Federal Express Corporation (Federal) petitioned for removal seasonably. At the conclusion of plaintiffs' case, Federal has moved for a directed verdict in its favor on all of plaintiffs' claims.

The action arises from Federal's termination of its employment of Leahy and Mollica as couriers after a security investigation raised suspicions as to their implication in the theft of an expensive wristwatch entrusted to Federal for overnight delivery. Initially, plaintiffs advanced eight claims, but Chief Judge Weinstein dismissed before trial a claim alleging a violation of New York Labor Law § 734(1) and plaintiffs have now withdrawn their claim of tortious and abusive discharge and Mollica's claim of libel. There remain the following claims:

(1) breach of an alleged employment contract;

(2) false imprisonment;

(3) assault;

(4) intentional infliction of emotional distress; and

(5) negligent infliction of emotional distress.

[*] Of the United States Court of International Trade, sitting by designation.

In considering Federal's motion for a directed verdict, Fed.R.Civ.P. 50(a), the court must view the evidence in the light most favorable to plaintiffs and must give them the benefit of all inferences fairly supported by the evidence. *See, e.g., Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 696, 82 S.Ct. 1404, 1409, 8 L.Ed.2d 777 (1962); *Feldman v. Simkins Industries, Inc.*, 679 F.2d 1299, 1303 (9th Cir.1982); *Fortunato v. Ford Motor Co.*, 464 F.2d 962, 965 (2d Cir.), *cert. denied*, 409 U.S. 1038, 93 S.Ct. 517, 34 L.Ed.2d 487 (1972). If the court determines " 'that reasonable men could not arrive at a contrary verdict,' " *Cora Pub, Inc. v. Continental Casualty Co.*, 619 F.2d 482, 484 (5th Cir.1980) (quoting *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir. 1969) ), then a directed verdict is appropriate. Against this background, the court treats plaintiffs' claims seriatim.

## I. *Breach of Employment Contract*

Plaintiffs claim that Federal breached an employment contract under the theory enunciated in *Weiner v. McGraw-Hill, Inc.*, 57 N.Y.2d 458, 443 N.E.2d 441, 457 N.Y. S.2d 193 (1982). In *Weiner*, the New York Court of Appeals held for the first time that a plaintiff had pleaded a good cause of action for breach of contract even though he had not been hired for a specific term of employment. The court held it possible for an employer to bind itself by promises in a handbook that employees would not be dismissed without "just and sufficient cause" or rehabilitative efforts, assuming that the employee relied on these promises when he accepted employment. *Weiner* listed the allegations that, taken together, evinced a contract and a breach:

First, plaintiff was *induced to leave* Prentice-Hall with the assurance that McGraw-Hill would not discharge him without cause. Second, this assurance was *incorporated* into the employment application. Third, plaintiff *rejected other offers* of employment *in reliance* on the assurance. Fourth, appellant alleged that, on several occasions when he had recommended that certain of his subor-

dinates be dismissed, he was instructed by his supervisors to proceed *in strict compliance with the handbook and policy manuals* because employees could be discharged *only for just cause.* He also claims that he was told that, if he did not proceed in accordance with the strict procedures set forth in the handbook, McGraw-Hill would be liable for legal action.

*Id.* at 465–66, 443 N.E.2d at 445, 457 N.Y. S.2d at 197 (emphasis added).

The gold rush of litigation touched off by *Weiner* was blunted, in large measure, by *Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 448 N.E.2d 86, 461 N.Y.S.2d 232 (1983). Murphy contended that "in all employment contracts the law implies an obligation on the part of the employer to deal with his employees fairly and in good faith and that a discharge in violation of that implied obligation exposes the employer to liability for breach of contract." *Id.* at 304, 448 N.E.2d at 91, 461 N.Y.S.2d at 237. This proposition was rejected by the Court of Appeals, which summarized the applicable New York law:

[A]bsent a constitutionally impermissible purpose, a statutory proscription, or an *express limitation in the individual contract of employment,* an employer's right at any time to terminate an employment at will remains unimpaired.

*Id.* at 305, 448 N.E.2d at 91, 461 N.Y.S.2d at 237 (emphasis added).

The potentially broad implications of *Weiner* were very nearly limited to the facts of that case: "on an appropriate evidentiary showing, a limitation on the employer's right to terminate an employment of indefinite duration might be imported from an *express provision* therefor found in the employer's handbook on personnel policies and procedures." *Id.* (emphasis added).

The court is not unmindful of the "harshness of a rule which permits an employer to discharge with impunity a 30-year employee one day before his pension vests," *id.* at 307, 448 N.E.2d at 93, 461 N.Y.S.2d

at 239 (Meyer, J., dissenting in part), but it goes without saying that, in this diversity action, the court must apply New York law as explicated by the New York Court of Appeals. The *Murphy* principle has been applied by state and federal courts, often with unpleasant consequences for wrongful discharge claimants.

Thus, in *Rizzo v. International Brotherhood of Teamsters, Local 237,* App.Div., 486 N.Y.S.2d 220 (1st Dep't 1985), the Appellate Division reversed Special Term's denial of defendant's motion for summary judgment, despite plaintiff's argument that she hoped to discover codified personnel policies that would give rise to a *Weiner* claim. *Rizzo* held that the existence of such policies would be unavailing to plaintiff because "they were not known to plaintiff at the time she began her employment, nor indeed thereafter, and therefore could not have been relied upon by plaintiff so that they might be deemed express limitations on the defendants' right to terminate her employment at will...." *Id.* 486 N.Y. S.2d at 221.

Sixteen days after rendering its opinion in *Rizzo,* the same Appellate Division decided *Wexler v. Newsweek, Inc.,* App.Div., 487 N.Y.S.2d 330 (1st Dep't 1985). Plaintiff, whose employment was terminated after nearly twenty years with Newsweek because of "budget considerations," was unable to derive benefit from *Weiner,* which the court observed was "a rather unique case." *Id.* 487 N.Y.S.2d at 331. Notwithstanding Wexler's allegations that defendant's Supervisor's Manual stated "that an employee satisfactorily performing his job could be terminated 'only under extreme circumstances'" and that no such extreme circumstances existed, the court held that plaintiff failed to state a cause of action for breach of contract. *Id.* 487 N.Y.S.2d at 331.

In *Toshiba America, Inc. v. Simmons,* 104 A.D.2d 649, 480 N.Y.S.2d 28 (2d Dep't 1984), the court held that the employee's "allegation that at the time of hiring he was told by plaintiff's personnel that plaintiff was 'a good employer from the stand-point * * * of job security [and] that if any problems arose [plaintiff] would endeavor to work them out equitably' is insufficient to defeat plaintiff's motion for summary judgment...." *Id.* at 649–50, 480 N.Y. S.2d at 28 (citing *Murphy*).

*Weiner* was distinguished, and *Murphy* relied upon, in *Patrowich v. Chemical Bank,* 98 A.D.2d 318, 470 N.Y.S.2d 599 (1st Dep't), *appeal dismissed as against defendant Chemical Bank,* 62 N.Y.2d 801, *aff'd per curiam as against defendant Corney,* 63 N.Y.2d 541, 473 N.E.2d 11, 483 N.Y.S.2d 659 (1984). The Appellate Division found plaintiff's reliance upon an employee manual misplaced, since Chemical's manual "contain[ed] no provision requiring termination solely for good cause shown," but merely provided "general policy statements and supervisory guidelines." *Id.* at 322, 470 N.Y.S.2d at 603. *Accord Citera v. Chemical Bank,* 105 A.D.2d 636, 481 N.Y. S.2d 694 (1st Dep't 1984). *See generally McKay v. Capital Cities Communications, Inc.,* 605 F.Supp. 1489 (S.D.N.Y. 1985) (available on WESTLAW, General Federal database, DCT file, May 9, 1985) (holding that *Murphy* precludes a finding of implied limitation on employer's unfettered right to terminate at will employees at any time); *Salanger v. U.S. Air,* No. 81–CV–542, 611 F.Supp. 427 (N.D.N.Y. 1985) (judgment for defendant in absence of express limitation on employer's right to terminate employment at will at any time); *Carlson v. Viacom International Inc.,* 566 F.Supp. 289, 290–91 (S.D. N.Y.1983) (employer is under no good faith obligation to allow employee at will to continue employment).

In this case, both Leahy and Mollica signed employment applications that included an agreement, two paragraphs of which are crucial:

> That should I be given employment either in the position applied for or any other, now or hereafter, such employment shall be for an indefinite period and may be terminated at any time without notice or liability for wages or salary,

except such earned at date of such termination....

\*   \*   \*   \*   \*   \*

That all terms and conditions of my employment, except to the extent covered specifically by this contract or any other valid contract between Company and me (or someone legally acting on my behalf) shall be determined and governed by Company's Policies and Procedures Manual, as same may be amended from time to time hereafter (a copy of which, together with all amendments, shall at all times be available to me).

Federal emphasizes the first paragraph as guaranteeing its right to terminate at any time employees at will. Plaintiffs argue that the second paragraph incorporated the provisions of the manual known as *Your Employee Handbook* and the Guaranteed Fair Treatment Procedure (GFTP) covered therein. Additionally, plaintiffs testified that oral representations were made to them by Federal employees, with Leahy being told that Federal provided good, secure employment and Mollica being told that he could not be fired unless he was caught stealing.

■ Given all these considerations, and taking all the evidence in the light most favorable to plaintiffs, their claims for breach of contract remain legally insufficient and may not go to the jury. For even if plaintiffs are correct that Federal violated the spirit and letter of the GFTP and did not give them the hearing to which they believed themselves entitled, nowhere in the record is there any indication of an express limitation on Federal's right to terminate employees at will, as required by *Murphy*. Indeed, the unambiguous language of the first paragraph of the agreement quoted above expressly *preserved* Federal's right to terminate employees at will.

■ Moreover, nothing in the record rises to the level of the promises made in *Weiner*. General statements about job security, and even an oral representation that employees could not be fired without just cause, do not satisfy the panoply of requirements set forth in *Weiner*. Whether or not each of the factors listed in *Weiner* was necessary to the result in that case, the paucity of the record here makes it clear that plaintiffs have not satisfied the *Weiner* standard.

■ Finally, the record indicates that Leahy and Mollica were unemployed and did not turn down any pending job offers when they accepted employment with Federal. The absence of reliance upon the alleged promises of Federal is particularly telling and further removes plaintiffs from the *Weiner* criteria. Accordingly, defendant's motion for a directed verdict on plaintiffs' breach of contract claims is granted.

II. *False Imprisonment, Assault, Intentional Infliction of Emotional Distress, and Negligent Infliction of Emotional Distress*

In support of their claims for false imprisonment, assault, intentional infliction of emotional distress, and negligent infliction of emotional distress, plaintiffs have testified that they were mistreated by Federal employees during the security investigation that followed the disappearance of the wristwatch. More specifically, Leahy testified that a Federal employee named John Flynn prevented him from leaving a room and placed him in apprehension of immediate harm by pulling back his jacket to reveal a firearm he was carrying. Mollica testified that he was similarly confined to a room and placed in apprehension of immediate harm when a Federal employee named John Ridell placed his arm upon the wall and pushed Mollica backwards in response to Mollica's attempt to exit.

To establish a false imprisonment claim, "plaintiff must show that: (1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged...." *Broughton v. State*, 37 N.Y.2d 451, 456, 335 N.E.2d 310, 314, 373 N.Y.S.2d 87, 93, *cert. denied*, 423 U.S. 929, 96 S.Ct. 277, 46 L.Ed.2d 257 (1975).

"An action for an assault need not involve physical injury, but only a grievous affront or threat to the person of the plaintiff." *DiGilio v. William J. Burns International Detective Agency, Inc.,* 46 A.D.2d 650, 650, 359 N.Y.S.2d 688, 689 (2d Dep't 1974).

The requisites of a cause of action for intentional infliction of severe emotional distress were enumerated in *Fischer v. Maloney,* 43 N.Y.2d 553, 557, 373 N.E.2d 1215, 1217, 402 N.Y.S.2d 991, 992–93 (1978):

> An action may lie for intentional infliction of severe emotional distress "for conduct exceeding all bounds usually tolerated by decent society" (Prosser, Torts [4th ed.], § 12, p. 56). The rule is stated in the Restatement, Torts 2d, as follows: "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress" (§ 46, subd. [1]; see for one aspect Comment *d*: "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community").

▪ Taking all the evidence in the light most favorable to plaintiffs, the court finds that they have made out prima facie cases on their claims for false imprisonment, assault, and intentional and negligent infliction of emotional distress. Accordingly, defendant's motion for a directed verdict on these claims is denied.

SO ORDERED.