403 S.E.2d 751

**Erin SUTER, Plaintiff Below, Appellee,**

v.

**HARSCO CORPORATION, Defendant Below, Appellant.**

**No. 19424.**

Supreme Court of Appeals of
West Virginia.

Submitted Jan. 8, 1991.

Decided March 28, 1991.

Rehearing Denied April 24, 1991.

not include structural renovations such as wheelchair ramps. Instead, the phrase is limited to services.

Paul T. Tucker, Jeffrey A. Holmstrand, Bachmann, Hess, Bachmann & Garden, Wheeling, for appellant.

Christine Machel, William E. Watson & Associates, Wellsburg, and William J. Ihlenfeld, Wheeling, for appellee.

NEELY, Justice.

In this appeal, we revisit the question of employee handbooks as implied contracts. In *Cook v. Heck's Inc.*, 176 W.Va. 368, 342 S.E.2d 453 (1986), we held that an employee handbook could modify an existing employment at will relationship and vest in the employee contractual rights to job security. In the case before us, we find it necessary to clarify the "employee handbook" exception to the presumptive employment at will relationship.

Harsco is the successor in interest to H.B. Reed Minerals, and operates a plant in Marshall County, West Virginia, where it produces stone products such as roofing granules and sand blasting particles. On 14 September 1983, Erin Suter, appellee, applied for a position as a shipping clerk in the Marshall County plant. She filled out an employment application that contained, immediately above the place for her signa-

ture, the following statement in all capital letters:

I UNDERSTAND AND AGREE THAT, IF HIRED, MY EMPLOYMENT IS FOR NO DEFINITE PERIOD AND MAY, REGARDLESS OF THE DATE OF PAYMENT OF MY WAGES AND SALARY, BE TERMINATED AT ANY TIME WITHOUT ANY PRIOR NOTICE.

Ms. Suter read the disclaimer and signed the application.

The next day, the company offered Ms. Suter the job, and she accepted. One of her duties as a new employee was to read the multi-volume guide to Reed Minerals, called *Policies, Operating Procedures* (P.O.P.). Ms. Suter read the P.O.P., with special emphasis on the procedures of her work area, shipping. The P.O.P. is the "employee handbook" alleged by Ms. Suter to give rise to contractual rights to job security.[1]

Over the next year and a half, Ms. Suter received regular evaluations and pay increases. However, in 1985, the plant experienced an unusually high number of problems. Harsco investigated the problems and concluded that they resulted from hostile relations between Ms. Suter and the plant manager. Harsco decided that it would be in the best interest of the company to fire both the plant manager and Ms. Suter.

The next year, Ms. Suter filed suit against Harsco, on seven counts, ranging from breach of implied and express con-

tract to intentional infliction of emotional distress. The suit boils down to an action for breach of an implied contract of employment, where one of the terms is alleged to be that Ms. Suter would be fired only for good cause. The trial court denied Harsco's motion for summary judgment, and allowed the jury to decide whether the P.O.P. created a unilateral contract. Harsco now contends that the trial court should have decided that, as a matter of law, the P.O.P. did not modify the employment at will relationship, and we agree.

## I

In *Cook v. Heck's, supra,* the employee handbook that we treated as an offer of unilateral contract contained a *definite promise* by the employer not to discharge the employee except for cause. We found that "[t]he inclusion in the handbook of specified discipline for violations of particular rules accompanied by a statement that the disciplinary rules constitute a complete list is *prima facie* evidence of an offer for a unilateral contract of employment modifying the right of the employer to discharge without cause." *Id.,* 176 W.Va. at 374, 342 S.E.2d at 459.

Here, however, any implied promise one might infer from the P.O.P. is not definite enough to form the basis of a unilateral contract that would modify the employment at will relationship, particularly in light of the disclaimer that Ms. Suter signed.[2]

---

1. As a threshold matter, it is worth noting that the P.O.P. is an exhaustive resource, consisting of several hundred pages, the thrust of which is primarily to explain to employees how to do their jobs.

   That the personnel manual in this case addresses far more than issues of employment reinforces the view that this manual is just what it purports to be, a guide to Reed Minerals' company policy and operating procedures, and is not a substitute for detailed and standardized employment contracts.

2. The P.O.P., in its section on seniority, stated:
   New employees are subject to a probationary period of *60 days* during which the new hire is continuously employed. At the end of, or anytime during this period, the company retains the right to discharge new employees

without cause. Probationary employees are not eligible for holiday pay benefits.

One might infer from this language that the employer had a policy of refraining from discharging an employee without cause, once the employee had completed the probationary period. Any implied promise is less than definite, however. For one thing, there is no "complete list" of offenses for which an employee may be terminated, like the list in *Cook v. Heck's.* The P.O.P., in its section on seniority, discusses the classes of employee offenses and the corresponding discipline, but, unlike the employee handbook in *Cook v. Heck's,* makes it clear that it is not giving a complete list:
   "[t]he enumeration of causes for discipline and discharge shall not limit the plant manager's right to discharge employees for any other cause."

In the seminal case recognizing that employee handbooks can give rise to contractual rights, *Toussaint v. Blue Cross & Blue Shield*, 408 Mich. 579, 292 N.W.2d 880 (1980), the court made it clear that employers could protect themselves by requiring prospective employees to acknowledge that they served at the will and the pleasure of the employer. 408 Mich. at 612, 292 N.W.2d at 891. In *Radwan v. Beecham Laboratories*, 850 F.2d 147 (3rd Cir.1988) (applying New Jersey law), *rehearing denied* (July 27, 1988), the employee signed an employment application containing the following statement:

I authorize investigation of all statements contained in this application. I understand that misrepresentation of facts called for is cause for dismissal. *Further, I understand and agree that my employment is for no definite period and may, regardless of the date of payment of my wages and salary, be terminated at any time without previous notice.* [Emphasis added.]

850 F.2d at 148–49. The underlined part of the statement is almost identical to the disclaimer that Ms. Suter read and signed. The court said:

In view of Radwan's acceptance of a term of employment providing without qualification that he could be terminated at any time without previous notice, he could hardly have any reasonable expectation that Beecham's manual granted him the right only to be discharged for cause.

*Id.*, at 150. The exact same reasoning applies in this case. Ms. Suter acknowledged the employment at will relationship, so she cannot claim a reasonable expectation that Reed Minerals' manual granted her the right to be discharged only for cause.

■ Although we recognize that the disclaimer signed by Ms. Suter could have been even bolder,[3] we find that, as a matter of law, it adequately proclaimed that the employment relation was to be terminable at will.

## II

■ In West Virginia, the law presumes employment to be terminable at will. In Syl. Pt. 2, *Wright v. Standard Ultramarine & Color Co.*, 141 W.Va. 368, 90 S.E.2d 459 (1955), we said:

"When a contract of employment is of indefinite duration it may be terminated at any time by either party to the contract."

The burden is on the party contending that the relationship was other than terminable at will to rebut the presumption of employment terminable at will. Hence, the burden was on Ms. Suter to rebut the presumption of employment at will, rather than on her employer to show that the relationship was employment at will.

■ If the presumption in West Virginia were against employment terminable at will, an employer seeking to create an employment at will relationship would have to disclaim guarantees of job security in a very bold and definite way, perhaps with language such as "Employees serve at the will and pleasure of the employer and can be fired at any time and without any notice, for any reason or no reason at all." However, because we operate on the opposite presumption—that is, that every employment relation is terminable at will, any promises alleged to alter that presumptive relationship must be *very definite* to be enforceable.

■ Any *implied* promise in the handbook was effectively disclaimed by the *explicit* statement in the employment application that Ms. Suter read and signed. Some courts have required that disclaimers must

---

Thus, the P.O.P.'s list of offenses was explicitly intended not to be a "complete list".

The P.O.P.'s use of the phrase "any other cause" could be read as an implied promise that the company would fire employees only for "[good] cause." Nevertheless, the implied promise is not definite enough to alter the presumptive employment at will relationship, especially in light of the prominent disclaimer in the employment application.

**3.** Ms. Suter signed the employment application in September 1983, two and a half years before this Court issued its decision in *Cook v. Heck's, supra.* This fact explains why the disclaimer used by the employer was not more bold.

be placed in the employee handbook itself to be effective. *See, e.g., Loffa v. Intel Corp.*, 153 Ariz. 539, 544–45, 738 P.2d 1146, 1151–52 (Ct.App.1987); *Tiranno v. Sears, Roebuck & Co.*, 99 A.D.2d 675, 675, 472 N.Y.S.2d 49, 50 (1984); *Ferraro v. Koelsch*, 124 Wis.2d 154, 163–64, 368 N.W.2d 666, 671 (1985). Other courts, however, have adhered to the better rule and held that a disclaimer, preserving the employment at will relationship, may be contained in the application for employment. *See, e.g., Radwan v. Beecham Laboratories, supra*, at 150; *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460–61 (6th Cir.1986) (applying Michigan law). We hold that a disclaimer does not have to be placed in the employee handbook to be effective against implied promises contained in an employee handbook.

We also recognize, however, that a disclaimer may lose its effectiveness due to changed circumstances. For instance, if an employee signed an employment application containing a valid disclaimer, but ten years later the employer issued an employee handbook containing definite promises of job security, the handbook could supersede the employment application and form the basis of a new agreement. Hence, the wisest course for an employer seeking to disclaim any promises inferable from an employee handbook would be to place a clear and prominent disclaimer in the employee handbook.

█ In this case, however, the P.O.P. followed closely on the heels of the employment application, so it should not be seen as forming the basis for a new agreement modifying the employment at will relationship proclaimed in the employment application. The disclaimer signed by Ms. Suter was sufficient as a matter of law to disclaim the relatively indefinite promises allegedly contained in the P.O.P. Because the employer could discharge Ms. Suter at will, we need not address the question of whether the employer had just cause to fire Ms. Suter.

For the foregoing reasons, the judgment of the Circuit Court of Ohio County is reversed, and the case is remanded for entry of judgment in favor of the defendant.

Reversed.

MILLER, C.J., and McHUGH, J., dissent and reserve the right to file dissenting opinions.

McHUGH, Justice, dissenting:

I dissent. What the majority has done in reversing the verdict for the employee and directing the entry of judgment for the employer is, in effect, to grant a summary judgment, even though the jury reasonably could have drawn varying inferences from the evidence. To reach its result, the majority has engaged in a superficial and flawed analysis of the issues which it does address and, not surprisingly, has dodged the most troublesome issue in this case (see section III, *infra*). Together with the scant citation of authority, the unfocused approach of the majority opinion not only "makes bad law" but also will be of limited value in that it obfuscates, rather than clarifies, the emerging area of the law represented by *Cook v. Heck's Inc.*, 176 W.Va. 368, 342 S.E.2d 453 (1986).

As I discuss in section I, *infra*, the portion of syllabus point 4 of the majority opinion pertaining to the employment application is not supported by the better reasoned authorities, especially in light of syllabus point 2. Moreover, the fact that an employee handbook itself provides in effect that its provisions are not exclusive, by stating that the employer may discipline or discharge an employee for any other "cause," is not sufficiently clear, as a matter of law, to preserve the at-will status of the employment relationship. Syllabus point 5 should be stated in mandatory, not permissive, terms, that is, a clear and prominent disclaimer of the binding effect of an employee handbook must be set forth in the handbook itself, rather than merely in the employment application, in order to preclude the jury from considering whether the at-will status of the employment has been altered by the employee handbook.

I believe that the Circuit Court of Ohio County correctly submitted the pertinent

issues to the jury in this case with proper instructions. I would, therefore, affirm the judgment on the verdict in favor of the plaintiff-appellee.

## I

At the outset the majority concludes that the language in the employment *application,* quoted in the majority opinion, constituted, as a matter of *law,* a sufficient disclaimer foreclosing consideration by the jury of any promise of discharge "for cause" only contained in the subsequently issued employee handbook, the "Policy on Operating Procedures." I disagree.

An employer-employee relationship in the private sector which is of indefinite duration is rebuttably presumed to be "at-will" employment, that is, such employment is rebuttably presumed to be terminable at any time at the will of the employer or of the employee, with or without cause. *See* syl. pt. 3, *Wright v. Standard Ultramarine & Color Co.,* 141 W.Va. 368, 90 S.E.2d 459 (1955). However, "[c]ontractual provisions relating to discharge or job security may alter the at[-]will status of a particular employee." Syl. pt. 3, *Cook v. Heck's Inc.,* 176 W.Va. 368, 342 S.E.2d 453 (1986). As a specific application of this last principle of employment contract law, this Court, in syllabus points 5 and 6 of *Cook v. Heck's Inc.,* recognized the "personnel manual" or "employee handbook" exception to at-will employment:

5. A promise of job security contained in an employee handbook distributed by an employer to its employees constitutes an offer for a unilateral contract; and an employee's continuing to work, while un-

der no obligation to do so, constitutes an acceptance and sufficient consideration to make the employer's promise binding and enforceable.

6. An employee handbook may form the basis of a unilateral contract if there is a definite promise therein by the employer not to discharge covered employees except for specified reasons [or for cause].

*Accord,* syl. pts. 6–7, *Collins v. Elkay Mining Co.,* 179 W.Va. 549, 371 S.E.2d 46 (1988).[1]

On the other hand, several courts have concluded that provisions of a personnel manual or an employee handbook may be rendered *non* binding by a sufficiently clear and conspicuous disclaimer in writing to that effect, thereby maintaining the at-will status of the employment. *See, e.g., Wagenseller v. Scottsdale Memorial Hospital,* 147 Ariz. 370, 382–83, 710 P.2d 1025, 1037–38 (1985) (en banc); *Toussaint v. Blue Cross & Blue Shield of Michigan,* 408 Mich. 579, 612 & n. 24, 292 N.W.2d 880, 891 & n. 24 (1980); *Woolley v. Hoffmann–La Roche, Inc.,* 99 N.J. 284, 307, 309, 491 A.2d 1257, 1269–70, 1271, *as modified on another point,* 101 N.J. 10, 499 A.2d 515 (1985); *Small v. Springs Industries, Inc.,* 292 S.C. 481, 485, 357 S.E.2d 452, 455 (1987); *Thompson v. St. Regis Paper Co.,* 102 Wash.2d 219, 230, 685 P.2d 1081, 1088 (1984) (en banc). Whether such a written disclaimer is sufficiently clear and conspicuous is a question of fact when reasonable minds may draw different inferences as to clarity or conspicuousness from the particular language used in the disclaimer or

---

1. It is my opinion that syllabus point 6 of *Cook v. Heck's Inc.* is *not* limited to cases in which the personnel manual or employee handbook states, as in that case, that the disciplinary and discharge rules constitute "a complete list." We observed in *Cook* that a unilateral contract does not arise, as a matter of *law,* merely because the employer has alerted its employees that certain conduct may form the basis of a discharge. In *Cook* we concluded only that the "complete list" language was sufficient evidence to overcome the former employer's motion for a directed verdict and that "the jury as the trier of the facts

must determine whether a unilateral contract exists in light of all the evidence presented in this case." 176 W.Va. at 374, 342 S.E.2d at 459.

The real thrust of syllabus point 6 of *Cook v. Heck's Inc.* is indicated by this language from the body of the opinion: "A common thread running through those cases where personnel manuals are viewed as [unilateral] contracts is the existence of a definite promise by the employer not to discharge the employee except for *cause.*" 176 W.Va. at 374, 342 S.E.2d at 459 (emphasis added).

from the degree of prominence of the disclaimer in the document.[2]

There is a split of authorities on the question of whether a written disclaimer of the binding effect of express or implied discharge-for-cause provisions of a personnel manual or an employee handbook must be set forth in the personnel manual or employee handbook itself, as opposed to being set forth merely in an application for employment or other written employment agreement. Most state courts have required the disclaimer to be contained in the personnel manual or employee handbook itself in order to be effective, thereby maintaining the at-will status of the employment. *See, e.g., Loffa v. Intel Corp.*, 153 Ariz. 539, 544–45, 738 P.2d 1146, 1151–52 (Ct.App.1987); *Tiranno v. Sears, Roebuck & Co.*, 99 A.D.2d 675, 675, 472 N.Y.S.2d 49,

50 (1984) (mem.); *Ferraro v. Koelsch*, 124 Wis.2d 154, 163–64, 368 N.W.2d 666, 671 (1985). *See also Pagdilao v. Maui Intercontinental Hotel*, 703 F.Supp. 863, 866–67 (D.Haw.1988) (applying Hawaii law). These courts have emphasized that a personnel manual or an employee handbook, distributed *contemporaneously* with, *or subsequent* to, the employment application, may modify the original at-will status of the employment relationship. These courts, therefore, have concluded that an effective disclaimer must be set forth in the personnel manual or employee handbook itself in order to prevent such modification, and to preclude the discharged employee from being entitled to claim reasonable reliance upon express or implied promises of job security contained in the personnel manual or employee handbook.[3]

---

**2.** Two examples of disclaimers *in personnel manuals or employee handbooks* which were held to be so clear and conspicuous as to support the granting of the former employer's motion for summary judgment in an action for breach of an alleged unilateral contract brought by a discharged employee are *Eldridge v. Evangelical Lutheran Good Samaritan Society*, 417 N.W.2d 797 (N.D.1987), and *Castiglione v. Johns Hopkins Hospital*, 69 Md.App. 325, 517 A.2d 786 (1986), *cert. denied*, 309 Md. 325, 523 A.2d 1013 (1987). The disclaimer *in the handbook* in *Eldridge* stated directly above the employee's signature as follows:

'The contents of this Handbook are presented for your information. While we fully intend to continue offering the benefits and polices as written, The Ev. Lutheran Good Samaritan Society reserves the right to change or revoke them, permanently or temporarily, if it is in the best interest of the Society to do so. *No policy, benefit, or procedure implies or may be construed to imply this Handbook to be an employment contract for any period of time.*'

417 N.W.2d at 800 n. 3 (emphasis added by Supreme Court of North Dakota). Similarly, the disclaimer *in the handbook* in *Castiglione* provided:

'All managerial and administrative functions, responsibilities, and prerogatives entrusted to and conferred upon employers inherently and by law are retained and vested exclusively with [the Defendant Hospital], including but not limited to the right to exercise our judgement [sic] to establish and administer policies, practices, and procedures and change them, to direct and discipline our workforce and increase its efficiency, and to take whatever action is necessary in our judgement [sic] to operate [the Defendant Hospital].

' . . . .

'Finally, this handbook does not constitute an express or implied contract. The employee may separate from his/her employment at any time; the Hospital reserves the right to do the same.'

69 Md.App. at 330, 329, 517 A.2d at 788. *See also Otis v. Zayre Corp.*, 703 F.Supp. 634, 635 (W.D.Mich.1988), *aff'd without opinion*, 884 F.2d 580 (6th Cir.1989).

**3.** Some federal courts, whose precedents are not binding because they have anticipated what the applicable state law of the forum state would be, have reached the opposite conclusion. *See, e.g., Radwan v. Beecham Laboratories*, 850 F.2d 147, 150 (3d Cir.1988) (anticipating New Jersey law); *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460–61 (6th Cir.1986) (interpreting Michigan law); *Leahy v. Federal Express Corp.*, 609 F.Supp. 668, 672 (E.D.N.Y.1985) (interpreting New York law), *but see* the above cited New York state appellate court opinion in *Tiranno v. Sears, Roebuck & Co.*, which did not give conclusive effect to a disclaimer contained in the employment application but not contained in the employee handbook. A few *state* courts also have given controlling effect to a disclaimer of limitations on at-will employment set forth in an employment application. *See, e.g., Fournier v. United States Fidelity & Guaranty Co.*, 82 Md.App. 31, 42–43, 569 A.2d 1299, 1304, *cert. denied*, 319 Md. 581, 573 A.2d 1337 (1990).

Courts holding that a disclaimer in an employment application is effective have overlooked the fundamental principle that a personnel manual or an employee handbook may alter the original at-will status of the employment relationship. Moreover, these courts have failed to recognize that, as a practical matter, the employment application is only one of the initial steps in the hiring process. It may be

I agree with the following remarks, equally pertinent here:

[T]he issue posed by [the employer] ... that there was some special significance in the understanding of the parties on the date of hiring is specious unless it can be concluded that, once the hiring took place, no subsequent understanding or contract could replace what [the employer] considers to be a simple employment at-will contract. That position is untenable as a matter of law.

*Ferraro v. Koelsch*, 124 Wis.2d 154, 163–64, 368 N.W.2d 666, 671 (1985). Indeed, even when an employment application expressly recognizes the at-will status of the employment relationship at that time, a personnel manual or an employee handbook may form the basis of a contract replacing the at-will status with a discharge-for-cause status, unless the manual or handbook contains clear and conspicuous language preserving the at-will status of the employment.

Accordingly, I would hold that the provisions of a personnel manual or an employee handbook may be rendered nonbinding only by a sufficiently clear and conspicuous disclaimer to that effect set forth in the manual or handbook itself; a disclaimer set forth, as in the present case, solely in the application for employment is not sufficient to foreclose the fact finder from considering whether a unilateral employment contract existed as recognized in *Cook v. Heck's Inc.*, 176 W.Va. 368, 342 S.E.2d 453 (1986).

This view does not unduly restrict a private employer's options. A private employer may refrain from issuing a personnel manual or an employee handbook, or a private employer may, as discussed previously, clearly and conspicuously disclaim any limitations on the at-will status of the employment relationship. I echo the comments of the Supreme Court of New Jersey in *Woolley v. Hoffman–La Roche, Inc.*, 99 N.J. 284, 491 A.2d 1257, *as modified on another point*, 101 N.J. 10, 499 A.2d 515 (1985):

All that this opinion requires of an employer is that it be fair. It would be unfair to allow an employer to distribute a policy manual that makes the workforce believe that certain promises have been made and then to allow the employer to renege on those promises. What is sought here is basic honesty: if the employer, for whatever reason, does not want the manual to be capable of being construed by the [fact finder] as a binding contract, there are simple ways to attain that goal. All that need be done is the inclusion in a very prominent position of an appropriate statement that there is no promise of any kind by the employer contained in the manual; that regardless of what the manual says or provides, the employer promises nothing and remains free to change wages and all other working conditions without having to consult anyone and without anyone's agreement; and that the employer continues to have the absolute power to fire anyone with or without good cause.

99 N.J. at 309, 491 A.2d at 1271.

Therefore, if the employment application acknowledges the at-will status of the employment, but a personnel manual or an employee handbook containing definite promises of job security is distributed— even one which follows "closely on the heels of the employment application," as stated in the majority opinion—it is, in my opinion, *a jury question* whether such promises, in light of *all* of the evidence, are binding, unless the manual or handbook itself clearly and conspicuously negates the binding effect of the language in the manual or handbook. This approach is not merely "the wisest course" for the employer, as stated by the majority; rather, as *Woolley* states, "basic honesty" of the employer is assured, so that the employee is not lulled into a false sense of security.

---

filled out a considerable period of time before the employer decides to hire the individual. In any event, when a personnel manual or an employee handbook is distributed, the employment application should not have controlling effect as a matter of law.

## II

The majority concludes that the employee handbook, as a matter of *law*, did not contain a *definite* promise to discharge a nonprobationary salaried employee for cause only. I disagree.

This Court, in syllabus point 4 of *Cook v. Heck's Inc.*, 176 W.Va. 368, 342 S.E.2d 453 (1986), held that "[g]enerally, the existence of a contract is a question of fact for the jury." Other jurisdictions agree. For example, in *Lewis v. Equitable Life Assurance Society of the United States*, 389 N.W.2d 876 (Minn.1986), the employee handbook contained this statement: " 'Except for misconduct serious enough to warrant immediate dismissal, no employee will be discharged without previous warning and a period in which to bring performance up to a satisfactory level.' " *Id.* at 883. The Supreme Court of Minnesota rejected the employer's argument that this language, as a matter of law, was not definite enough to constitute an offer for a unilateral employment contract. The court concluded that a jury could infer reasonably from this language that the employer had surrendered its right to discharge employees freely, in light of the fact that only serious misconduct could constitute a ground for immediate dismissal and in light of the fact that in all other circumstances employees were entitled to a warning and an improvement period. The court added:

> While the handbook does not contemplate every possible question regarding procedures for employee dismissals, the language is definite enough to permit a jury to conclude that plaintiffs received certain contractual rights. The precise nature of those rights is unclear, but where the terms of a contract are unclear, it is for a jury to determine the intent of the parties.

*Id.*

The relevant language in the employee handbook in the present case is very similar to the quoted language in the employee handbook in *Lewis*. According to the employee handbook, certain offenses "are cause for immediate dismissal" and certain other offenses, such as the "poor job performance" alleged by the employer here, "are cause for disciplinary action and *eventual* termination," after written warnings on "employee warning record" forms. (emphasis added) The jury reasonably could infer from the words "eventual termination" that an improvement period was to be given to an employee for the less serious class of offenses like "poor job performance." In addition, the fact that the employer expressly reserved the right to discharge salaried employees, "without cause," *within or at the end of the initial sixty-day probationary period* could be interpreted reasonably as requiring a discharge after the initial probationary period to be *only* for "cause," meaning "good cause" or "just cause," that is, conduct substantially affecting the employer's legitimate business interests.

Finally, the language in the employee handbook that "[t]he enumeration of causes for discipline and discharge shall not limit the plant manager's right to discharge employees for any other cause" could be interpreted reasonably as authorizing discharges after the initial probationary period to be *only* for "cause," meaning "good cause" or "just cause," that is, conduct substantially affecting the employer's legitimate business interests.

Accordingly, "in light of all the evidence presented in this case[,]" *Cook v. Heck's Inc.*, 176 W.Va. 368, 374, 342 S.E.2d 453, 459 (1986), the question of whether the employee handbook contained a definite promise to discharge a nonprobationary salaried employee for cause only, thereby creating a unilateral employment contract offer, was, in my opinion, properly submitted to the jury.

In its discussion of the "definite promise" issue the majority opinion ignores the normal rules for distinguishing between questions of fact and questions of law. If reasonable minds could differ as to the inferences to be drawn from certain material facts, a question of fact is presented, precluding a directed verdict or a summary judgment. Such was the case here, but for the unique jurisprudence established, intentionally or unintentionally, by the majority.

opinion for unilateral employment contract creation. *Cook* requires only "definite" promises by the employer, not "very definite" promises, as stated in the majority opinion.

### III

Due to its belief that the employer, as a matter of law, could discharge the plaintiff-appellee at will, the majority does not reach the question of whether the employer had "cause" to discharge her. Because I believe the jury was entitled to find that the plaintiff-appellee was dischargeable for cause only, I do address the employer's ultimate assignment of error.

The employer argues that the trial court improperly instructed the jury that it, the jury, was entitled to determine whether there was in fact "cause" for the discharge of the employee. The employer contends that the jury should have been instructed to find a breach of any unilateral employment contract only if there was insufficient evidence of the employer's *good-faith belief* that there was in fact "cause" to discharge an employee. I disagree with the employer on this point.[4]

At the outset of this discussion I note that our opinion in *Cook v. Heck's Inc.*, 176 W.Va. 368, 342 S.E.2d 453 (1986), stated that if the jury on remand found a unilateral employment contract existed in that case, the *jury* was also to decide whether the employer breached the contract. *Id.* 176 W.Va. at 375, 342 S.E.2d at 460. What constitutes a breach by an employer of a unilateral employment contract?

Provisions in a personnel manual or in an employee handbook requiring "cause" (or "good cause" or "just cause") for a discharge of an employee raise two basic questions: (1) whether the employee in fact engaged in the conduct the employer alleged and (2) whether that conduct constitutes "cause" (or "good cause" or "just cause") for termination of employment. The employer in the present case raises the issue of who is to make the *first* of these determinations—the jury or the employer? There is a split of authorities on this issue.

Most courts specifically addressing the issue have held that the employer's factual determination that the employee engaged in the alleged conduct ordinarily *is* reviewable by a jury. In addition, a jury ordinarily is to assess the employee's job performance or competency, if at issue, based upon a "reasonable employer" standard, that is, would a reasonable employer have discharged the employee under the circumstances. *See, e.g., Adams v. Frontier Airlines Federal Credit Union*, 691 P.2d 352, 354 (Colo.Ct.App.1984), *as modified on denial of reh'g, cert. denied* (Colo. Nov. 26, 1984); *Video Electronics, Inc. v. Tedder*, 470 So.2d 4, 6 (Fla.Dist.Ct.App.1985), *approved on another point*, 491 So.2d 533 (Fla.1986); *Lukasik v. Riddell, Inc.*, 116 Ill.App.3d 339, 346, 72 Ill.Dec. 123, 128, 452 N.E.2d 55, 60 (1983); *Toussaint v. Blue Cross & Blue Shield of Michigan*, 408 Mich. 579, 620–24, 292 N.W.2d 880, 895–97 (1980).[5]

---

**4.** The jury was instructed, in pertinent part, over the employer's general objection, as follows:

An employee is discharged for 'cause' if the reason for the employee's discharge was such as a reasonable, fair-minded employer might act upon. The reason for the discharge should bear some reasonable relation to the employee's ability or willingness to perform the tasks assigned to her, and to the employer's interest in conducting its business without undue difficulty or interference.

The jury is not called upon to determine whether it would have discharged Erin Suter under the same circumstances. Instead, you are to judge the actions of the parties by an objective standard of reasonableness under all of the circumstances. You are to decide whether the reason or reasons given by Reed Mineral for discharging Erin Suter were such as a reasonable, fair-minded employer might have acted upon under the same circumstances.

**5.** A few courts have held that the employer's factual determination that the employee engaged in the alleged conduct ordinarily is not reviewable by a jury, as long as there is substantial evidence supporting the contention that the employer in *good faith* believed that "cause" (or "good cause" or "just cause") in fact existed. *See, e.g., Simpson v. Western Graphics Corp.*, 293 Or. 96, 643 P.2d 1276 (1982) (en banc); *Baldwin v. Sisters of Providence in Washington, Inc.*, 112 Wash.2d 127, 137–39, 769 P.2d 298, 303–04 (1989) (en banc) (relying upon *Simpson v. Western Graphics*).

I concur with the observations in *Toussaint,* the seminal opinion on the "personnel manual" or "employee handbook" exception to at-will employment in the private sector, that a promise to terminate employment for cause only would be illusory if the employer were permitted to be the sole judge and final arbiter of the propriety of the discharge; accordingly, where the employee has secured a promise not to be discharged except for cause, he or she has contracted for *more than* the employer's promise to act perhaps mistakenly but in good faith. 408 Mich. at 621, 623, 292 N.W.2d at 895, 896.

I also agree with the comment in *Toussaint* that an employer who has distributed a personnel manual or an employee handbook may avoid jury assessment of "cause" (or "good cause" or "just cause") by expressly providing for an alternative dispute resolution, such as binding arbitration on the issues of cause for discharge and damages. 408 Mich. at 624, 292 N.W.2d at 897.

In view of the foregoing, I would hold that when a private employer has agreed to discharge an employee for cause only, including misconduct or poor job performance, the employer's decision that the employee was discharged for misconduct or for poor job performance is subject to judicial review, unless the parties expressly have agreed to binding arbitration on the issue of cause for discharge. I would also hold that, in addition to determining whether the employee was in fact guilty of and discharged by the employer for misconduct or poor job performance, the jury is to determine whether a reasonable employer would have discharged the employee under all of the circumstances, in that the employee's misconduct or poor job performance substantially affected the employer's legitimate business interests.

The relevant instruction in this case, *see* the first instruction quoted in note 4, *supra,* was, in my opinion, an adequate statement of the law on this point.

Based upon all of the above, I believe that the final order of the Circuit Court of Ohio County should be affirmed.

I am authorized to state that Chief Justice MILLER joins in this dissenting opinion.