953 F.2d 1383
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Tuwana F. COOK; Frankie Cook, Plaintiffs-Appellants,
v.
NU-TECH HOUSING SERVICES, INCORPORATED, a corporation; Greg
Van Buskirk; Joseph S. Cozart; William Shumaker;
Kathy Cozart; Omar Limited
Partnership, Defendants-Appellees.
 No. 91-1159.
 United States Court of Appeals, Fourth Circuit.
 Argued Dec. 4, 1991.
Decided Feb. 5, 1992.
As Amended March 5, 1992.
 
 Appeal from the United States District Court for the Southern District of West Virginia, at Charleston. Dennis Raymond Knapp, Senior District Judge. (CA-88-480-2)
 Argued: Daniel Foster Hedges, Charleston, W.Va., for appellants; Anita Rose Casey, Meyer, Darragh, Buckler, Bebenek & Eck, Charleston, W.Va., for appellees.
 On Brief: Craig Levine, Charleston, W.Va., for appellants.
 S.D.W.Va.
 REVERSED AND REMANDED.
 Before DONALD RUSSELL, PHILLIPS and HAMILTON, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 On April 11, 1988, the Cook Appellants filed a complaint alleging wage claims on behalf of Tuwana Cook under the federal Fair Labor Standards Act, 29 U.S.C.A. §§ 203, 206 (West Supp.1991) and under the West Virginia Wage Payment and Collection Act, W.Va.Code §§ 21-5-3, 21-5-4(b) (1989) and further alleging a claim of unlawful eviction of Frankie Cook from a West Virginia apartment complex in violation of the Farmers Home Administration Act, 42 U.S.C.A. § 1480(g) (West Supp.1991). On June 27, 1991, the district court dismissed Appellant Tuwana Cook's federal wage claim, and entered summary judgment in favor of the Nu-Tech Appellees as to the Appellants' other claims. Finding error in the district court's dismissal of Tuwana Cook's wage claim under the Fair Labor Standards Act, and in the district court's grant of summary judgment on both of Tuwana Cook's claims under the West Virginia Wage Payment and Collection Act and on Frankie Cook's claim of wrongful eviction in violation of Farmers Home Administration Act, we reverse and remand for further proceedings.
 
 I.
 
 2
 Appellant Tuwana Cook was employed from December 6, 1986 until February 8, 1988 as resident manager of an apartment complex owned by Appellee Omar Limited Partnership in Omar, West Virginia. Nu-Tech Housing Services, Inc., ("Nu-Tech") is an Ohio Corporation authorized to conduct business in the State of West Virginia, and is the general partner of the Omar Limited Partnership. The Omar apartment complex is a federally-subsidized housing project which participates in Farmers Home Administration Act ("FmHA") housing assistance programs pursuant to 42 U.S.C. §§ 1471-1490.
 
 
 3
 Appellant Cook's employment at the Omar housing project included the performance of minor maintenance work at the apartment complex facility, but primarily entailed the collection of rent from other residents. Cook was paid at an hourly rate for the maintenance work, and received compensation on a commission basis for collecting rents and/or renting vacant units to new tenants. Tuwana Cook was compensated under this system during the entire time of her employment with Nu-Tech. Cook stated by affidavit that she received her wages from the defendant "only one time a month." (J.A. at 115.) While Cook was aware of the terms of her compensation when she accepted employment with Nu-Tech, she states that she "thought that minimum wage would be included in that [agreement]." (J.A. at 321.) At no time did Appellants fail to pay Cook according to the terms on which she accepted employment at the Omar complex. (J.A. at 36061.)
 
 
 4
 Susan Tutt, formerly a property manager employed with Nu-Tech at the corporation's Reynoldsburg, Ohio office, stated by affidavit,
 
 
 5
 From this Ohio office I had the responsibility for overall supervision of the buildings, over hiring and firing, over training resident managers, over supervising the maintenance people, supplying materials, authorizing purchases, and general oversight of all these properties, and specifically management of the Omar Limited Partnership property where Tuwana F. Cook was employed.
 
 
 6
 ... There were a number of communications each week, both in writing and by telephone, from Tuwana F. Cook and the Omar Limited Partnership, in that all the paperwork was handled out of the Reynoldsburg, Ohio office and all the management and individual client files were kept there. All management was accomplished out of the Ohio office. (J.A. at 216.)
 
 
 7
 On February 4, 1988, Appellant Tuwana Cook notified her supervisor, Sandra Mayerink, that she was terminating her employment as resident manager of the Omar apartment complex. (J.A. at 206-07.) As of February 8, 1988, however, Cook had changed her mind, and expressed a desire to resume her employment with Nu-Tech in a telephone conversation with Nu-Tech manager Greg Buskirk. According to Cook, Van Buskirk told her that she could "keep" the job, but that he was "coming down to discuss the problems that [she] was having" at the Omar complex. (J.A. at 373.) After travelling from Reynoldsburg, Ohio to Omar, West Virginia to assist in the search for and transition to a new apartment complex manager, Buskirk informed Cook in person on February 9, 1991 that she would be unable to continue employment with Nu-Tech because Appellee President and principal of Nu-Tech Joseph Cozart had stated that she " 'cannot have the job.' " (J.A. at 381-82.) Buskirk also traveled from Reynoldsburg to Omar to appear in eviction proceedings against a tenant in the complex. (J.A. at 365, 369.) On February 9, 1988, Tuwana Cook signed an agreement by which she agreed to vacate the unit she occupied at the Omar complex with her mother by the end of that month. (J.A. at 39798.) Cook also purported to sign the agreement to vacate on behalf of her mother, Frankie Cook, in whose name the apartment was rented, since her mother was in fact unable to write due to disabilities incurred as the result of a stroke. (J.A. at 398, 407.) On March 8 or 9, 1988, Tuwana Cook received a final accounting and paycheck for her employment with Nu-Tech.
 
 II.
 
 8
 The minimum wage provisions of the Fair Labor Standards Act ("FLSA") apply to an employee who is "engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce."[1] 26 U.S.C.A. § 206(a). Citing Mitchell v. C.W. Vollner and Co., wherein the Supreme Court stated, "whether an employee is engaged 'in commerce' within the meaning of the present Act is determined by practical considerations, not by technical conceptions," 349 U.S. 427, 429 (1955), the district court determined that Cook's employment with Nu-Tech was not of such an interstate quality as to be "in commerce." (J.A. at 301-02.) The district court therefore dismissed Tuwana Cook's wage claims under the FLSA for lack of federal question jurisdiction, explaining,
 
 
 9
 the [c]ourt fails to see how the Act applies either to the defendants or to the plaintiff who has failed to establish that her job activity substantially affected commerce in the traditional sense. The facts of this case show that the apartment complex where plaintiff worked was a local concern and the plaintiff's job activity affected only the local tenants. Plaintiff's activities were not of interstate character or impact.
 
 
 10
 (J.A. at 301.)
 
 
 11
 On appeal, Tuwana Cook disputes this determination by the district court. To support her position, Cook points, for example, to the Tutt affidavit noted above and to Buskirk's travel between Ohio office and the West Virginia complex in furtherance of Nu-Tech's business. Cook contends that the principals of Nu-Tech actively managed both her work and the Omar, West Virginia apartment complex from their Reynoldsburg, Ohio office through the use of interstate written communications, telephone conversations and travel, and that this interstate transmission of information and activity sufficed to place her employment "in commerce" for purposes of FLSA. We agree.
 
 
 12
 Subsequent to the Supreme Court's statement in Mitchell v. C.W. Vollner and Co., 349 U.S. at 429, the Fourth Circuit elaborated upon the practical considerations determining whether an activity is "in commerce" in Schultz v. Falk, 439 F.2d 340 (4th Cir.1971). This court observed,
 
 
 13
 [A]t least two of defendants' employees at their main office ... have been engaged in handling, preparing, mailing or otherwise working on insurance policies or other materials for transmission across state lines.... It was also stipulated that, as a regular incident of their management of rental property, employees of the buildings managed by defendants repair plumbing, heating and air conditioning units, and that substantial portions of the materials used in these activities moved across state lines.... [A]t each of three of the apartment houses managed by defendants, at least one employee has been regularly engaged in telephone and mail communications with the owners of the buildings across state lines concerning their operation.
 
 
 14
 Schultz v. Falk, 439 F.2d at 348 (emphasis added). The court in Schultz v. Falk concluded that, where the defendants managed approximately thirty (30) apartment buildings in various Virginia cities from their main office in Newport News, Virginia, and also engaged in the selling of real estate and the interstate selling of insurance, "There can be no doubt that defendants do have employees engaged in commerce" within the meaning of FLSA, 29 U.S.C. § 203. 439 F.2d at 342, 348.
 
 
 15
 This court is of the opinion that a similar result obtains here. While the Appellee Nu-Tech does not appear to have engaged in the interstate sales of insurance or other goods and services, and while it was not established that Tuwana Cook used materials which had moved in commerce to perform her light maintenance duties for the Omar complex, Nu-Tech nonetheless appears to have actively managed the Omar, West Virginia complex from the Ohio office and to have engaged in frequent interstate communications and travel to facilitate that management. If, on the circumstances of Schultz v. Falk, 439 F.2d at 642, 648, the management of apartment buildings located within the state of Virginia from a main office in Newport News, Virginia was determined to be "in commerce," then Nu-Tech's management here of the Omar, West Virginia complex from Nu-Tech's Reynoldsburg, Ohio office is also properly viewed as in commerce within the meaning of FLSA, 29 U.S.C. §§ 203, 206. The district court's dismissal of Tuwana Cook's wage claims under FLSA for lack of federal question jurisdiction is therefore reversed, and the issue remanded to the district court for further proceedings consistent herewith.[2] Appellant Tuwana Cook also appeals the district court's grant of summary judgment in favor of Nu-Tech Housing Services, Inc. on Cook's two claims that Nu-Tech violated the West Virginia Wage Payment and Collection Act. First, Cook contends that the district court erred in granting summary judgment on her claim under section 21-5-3 of the Act, which provides, "Every ... corporation doing business in this State ... shall settle with its employees at least once in every two weeks, unless otherwise provided by special agreement...." W.Va.Code § 21-5-3 (1989). The district court found that NuTech paid Tuwana Cook only once a month, and also found that since no "special agreement," as defined by W.Va.Code § 21-5-1(f), existed between Nu-Tech and Cook, Nu-Tech was in violation of section 21-5-3. (J.A. at 115, 303.) However, the district court referred to the violation as "technical[ ]," stated that, "[u]nder these circumstances, the court finds that the plaintiff can show no damages from the fact that she was paid only once a month," and then granted the Nu-Tech Defendants' motion for summary judgment on the claim. (J.A. 302-05.)
 
 
 16
 We conclude the district court erred in thereby granting Nu-Tech's motion for summary judgment on Cook's claim under section 21-5-3. Cook sought a declaratory judgment pursuant to 28 U.S.C. §§ 22012202, rather than monetary damages, for this alleged violation of the West Virginia Wage Payment and Collection Act. (J.A. at 101-02.) A declaratory judgment is one which simply declares the rights of the parties or expresses the opinion of the court on a question of law, without ordering that anything be done; its distinctive characteristic being that the declaration stands by itself, and no executory process follows. The declaratory action is therefore distinguished from other actions in that it does not seek execution of performance from the defendant. E.g., Gutensohn v. Kansas City Southern Ry., 140 F.2d 950, 953 (8th Cir.1944). Here, as the district court found, Nu-Tech was concededly in violation of section 21-5-3. Thus, the district court ought to have granted summary judgment in favor of Cook on her claim for a declaratory judgment under section 21-5-3, and thereafter entered a finding, if appropriate on the instant facts, that Cook could prove no monetary damages arising from such violation. Accordingly, the district court's entry of summary judgment in favor of Nu-Tech on Cook's claim under W.Va.Code § 21-5-3 is also reversed and remanded.
 
 
 17
 Appellant Cook next disputes the district court's grant of summary judgment in favor of Nu-Tech on her claim that the corporation violated section 21-5-4(b) of the West Virginia Wage Payment and Collection Act. Section 21-5-4(b) provides, "Whenever a ... corporation discharges an employee, such ... corporation shall pay the employee's wages in full within seventy-two hours." W.Va.Code § 21-54(b) (1989). The district court ruled that "the evidence shows unequivocally that plaintiff resigned her employment" as of February 4, 1988. (J.A. at 302.) Concluding that section 21-5-4(b) therefore did not apply to Tuwana Cook, the district court granted summary judgment for Nu-Tech on Cook's claim that Nu-Tech violated this section by paying her final wages on March 8 or 9, 1988, a date well outside the seventy-two hour deadline imposed under section 21-5-4(b).
 
 
 18
 Of course, in West Virginia, "the law presumes employment to be terminable at will." E.g., Suter v. Harsco Corp., 403 S.E.2d 751, 754 (W.Va.1991). And, " 'When a contract is of indefinite duration it may be terminated at any time by either party to the contract." Id. (quoting Wright v. Standard Ultramarine & Color Co., 90 S.E.2d 459 (W.Va.1955). Here, both parties acknowledge that on February 4, 1988, Appellant Tuwana Cook notified her supervisor at Nu-Tech, Sandra Mayerink, that she "intended to quit" her employment as resident manager of the Omar apartment complex. (J.A. at 375.) Cook did not, however, inform Nu-Tech of the date of her intended resignation. As of Monday February 8, 1988, Cook had evidently changed her mind about quitting, and requested of Greg Van Buskirk that she be allowed to keep her job. (See J.A. at 380-81.) Cook stated in her deposition that Van Buskirk told her that "was fine" with him and that "[h]e had no problem with [Cook] staying resident manager." (J.A. at 381.) However, Cook also stated that on Tuesday, February 9, 1988, Van Buskirk "terminated" her, and explained that Nu-Tech President Joseph Cozart said she " 'cannot have the job.' " (J.A. at 380, 382.)
 
 
 19
 Cook's deposition testimony is not a model of clarity. However, the testimony is reasonably susceptible of the view that, since Cook never stipulated the date of her resignation, she did not actually resign her at-will employment at Nu-Tech within the meaning of Suter v. Harsco Corp., 403 S.E.2d 751, 754 (W.Va.1991), before Van Buskirk terminated her. Indeed, one may also read the testimony to indicate that, if Cook actually quit her job at Nu-Tech on February 4, 1988, then Van Buskirk re-hired Cook on Monday February 8 only to terminate her on February 9. On motion for summary judgment, the court is bound to view the underlying facts in the light most favorable to the non-moving party. Matsushita Elec. Indust. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). On these facts, we cannot say there is no issue of fact as to whether Cook resigned her employment and section 21-5-4(b) therefore did not apply to her. Accordingly, we reverse the district court's entry of summary judgment on Cook's section 21-5-4(b) claim and remand the issue for proceedings consistent with this opinion.
 
 
 20
 Finally, Appellant Frankie Cook appeals the district court's entry of summary judgment on her claim for wrongful termination of tenancy in violation of rules promulgated pursuant to the Farmers Home Administration Act ("FmHA"), 42 U.S.C.A. § 1480(g) (West 1990). Under FmHA, the Secretary of Agriculture may
 
 
 21
 issue rules ... which assure that ... persons ... whose assistance under this subchapter is being ... terminated are given written notice of reasons for ... termination and are provided at least an opportunity to appeal an adverse decision and to present additional information relevant to that decision to a person, other than the person making the original determination, who has authority to reverse the decision....
 
 
 22
 42 U.S.C.A. § 1480(g).
 
 
 23
 The rules promulgated by the Secretary pursuant to section 1480(g) state, "Borrowers and project managers should actively develop ways and means to avoid forced terminations of lease and the eviction of tenants by considering the following: "... The borrower or project manager may terminate or refuse to renew any tenancy only for material non-compliance with the lease or other good cause...." 7 C.F.R. pt. 1930, subpt. C, exh. B, p XIV (1991). Of course, whether Frankie Cook is entitled to the processes promulgated pursuant to section 1480(g) of the FmHA depends on whether she agreed to vacate the apartment by authorizing Tuwana Cook to sign the agreement to vacate on her behalf, or by somehow ratifying the agreement subsequent to Tuwana Cook's execution thereof. If Frankie Cook voluntarily terminated her tenancy at the Omar complex, Nu-Tech cannot be said to have terminated the tenancy in violation of the FmHA provisions.
 
 
 24
 The district court simply observed that "there is nothing in the record ... to support th[e] allegation" that Tuwana Cook signed the agreement to vacate without authority from Frankie Cook to sign the document on Frankie's behalf. (J.A. at 303.) However, Frankie stated by affidavit that Tuwana "was not authorized" to sign the agreement to vacate for her. (J.A. at 292.) In her deposition, Frankie Cook again confirmed that she did not give Tuwana Cook the authority to sign the document on her behalf. (J.A. at 407.) On motion for summary judgment, of course, the available evidence must be viewed in the light most favorable to the non-moving party. E.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Frankie Cook's written and oral testimony present a genuine issue of material fact as to whether Tuwana Cook had authority from Frankie Cook to sign the agreement to vacate on Frankie's behalf. Therefore, absent some factual determination by the district court that Frankie either expressly or constructively ratified her daughter's signature subsequent to Tuwana's execution of the agreement to vacate, Frankie's affidavit and deposition are sufficient to preclude summary judgment on Frankie's wrongful eviction claim under FmHA, 42 U.S.C.A. § 1480(g). The district court's entry of summary judgment on Frankie Cook's wrongful eviction claim is also reversed and remanded for proceedings consistent with this opinion.
 
 
 25
 For the foregoing reasons, the district court's decision is REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.
 
 
 
 [1]
 The Act defines commerce as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C.A. § 203(b) (West 1978)
 
 
 [2]
 In a footnote to the opinion below, the district court noted that the provisions of the FLSA currently apply to enterprises engaged in commerce and having an "annual gross volume of sales made or business done [of] not less than $500,000." (J.A. at 300) (citing 29 U.S.C.A. § 203(s)(1)(A)(i)-(ii) (West Supp.1991) [amending 29 U.S.C. § 203(s)(1) (1988) ]. However, the Nu-Tech Appellees' Consolidated Motion to Dismiss and for Summary Judgment, which the district granted in dismissing Tuwana Cook's FLSA claim, did not defend based on Nu-Tech's annual volume of business done, and relied entirely on Appellees' argument that Nu-Tech's activities were not in "commerce" as defined by 29 U.S.C. § 203(b) (1988). (J.A. at 191214.) Whether Nu-Tech's annual business done was of the volume stipulated by 29 U.S.C. § 203(s)(1) (1988), amended by 29 U.S.C.A. § 203(s)(1)(A)(i)(ii) (West Supp.1991), during the relevant time period is a question of fact that can be determined by the district court on remand