453 S.E.2d 340

**Dorothy DENT, Plaintiff Below, Appellant,**

v.

**Jack FRUTH and Fruth Pharmacy, Inc., a Corporation, Defendants Below, Appellees.**

No. 22129.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 27, 1994.

Decided Dec. 9, 1994.

Concurring Opinion of Justice McHugh Dec. 14, 1994.

---

John S. Haight, Ann L. Haight, Mary Jo Allen, Kay, Casto, Chaney, Love & Wise, Stanley E. Preiser, Frederick D. Fahrenz, Charleston, for appellant.

David D. Molgard, McQueen & Brown, Charleston, for appellees.

PER CURIAM:

Petitioner Dorothy Dent (hereinafter the "Appellant") appeals from an order of the Circuit Court of Kanawha County dated September 15, 1993, granting Jack Fruth and Fruth Pharmacy, Inc. (hereinafter the "Appellees") summary judgment. The Appellant requests that this Court reverse the lower court's ruling and remand this case for an adjudication on the merits. We agree with the Appellant's contention, and therefore reverse the lower court's ruling and remand for an adjudication on the merits.

## I.

The Appellant, a sixty-year old woman, was fired from her job as a clerk at Fruth Pharmacy on August 11, 1990. She filed a civil action against her employer, the Appellees, alleging that she was wrongfully discharged from her job in violation of an implied contract established by the employee handbook she received from the Appellees at the time she was hired.

Prior to the Appellant's discharge, the Appellees hired a Merit Protection Service "shopper", Greg Sorvas, to pose as a customer in its store for the purpose of evaluating employee job performance without the knowledge of the employees. On the day of the Appellant's alleged wrongful termination, the Appellant was in the process of ringing up a sale for a customer when the customer suddenly realized that she had forgotten an item and left the check-out line to go and get it. Since the Appellant was in the middle of a sale, she could not "close out" her register to ring up another sale until the first customer returned and completed her transaction. It was at this point that a regular customer, Bobby Love, entered the store to make his usual daily purchase of two packs of cigarettes. Out of habit, Mr. Love knew that the cigarettes cost $3.18, and, as he was late for work, he gave the Appellant the exact change without going through the whole transaction on the cash register.[1] Mr. Love later testified during a deposition that he knew he would not receive a receipt and chose to conduct the transaction in this manner in order to get to work.

When the Appellant received Mr. Love's money, she put it on the top of her cash register, intending to ring up the sale as soon as she completed the transaction with the customer who had stepped away from the register to retrieve a forgotten item. However, when the customer returned, the Appellant inadvertently put Mr. Love's $3.18 in the register with the first customer's money. The Merit Protection Service "shopper", having witnessed this entire transaction, reported it to the Appellees.

Initially, Tom King, the store manager, in conformance with the disciplinary procedures set forth in the Appellee's employee handbook, only issued the Appellant a written warning. He did not recommend that the Appellant be fired for what he characterized in his deposition as an honest mistake. However, after the incident was reported to Jack Fruth, the owner of the business, the Appellant was fired for "gross negligence of duty."

The Appellant was issued two editions of an employee handbook during the course of her employment. The first was a Xeroxed typewritten copy issued on the Appellant's date of hire and used until the second printed copy of the same document became available three months later. The handbook was entitled "Fruth—Your Everything Drugstore" and sets out specific duties and service standards which are expected of its employees. The handbook further sets out company policies regarding probation and discipline as follows:

> The Probationary Period for new employees is the first 90 days. During this time your manager will monitor your performance. You may be separated without notice during this period. After 90 days you must receive two written warnings of unsatisfactory performance within any 12–month period in order to be separated, unless an offense which warrants immediate termination is committed.

> Disciplinary Action in the form of verbal or written warnings is taken to document performance and/or behavior problems and correct them. If you receive a warning for a performance problem, you are expected to correct the situation. You may request the opportunity to discuss your warning with the Director of Human Resources if you feel it is unfair. After receiving two written warnings within a twelve-month period you may be terminated. Documentation of warning becomes part of your personnel file.

> Immediate Termination could occur for the following offenses:

---

1. The Appellant, as she was accustomed to waiting on Mr. Love, was also aware that the two packs of cigarettes cost $3.18.

* Violation of employee purchase guidelines.

* Falsification of company records (including timecards).

* Possession of a weapon on company property.

* Serious insubordination.

* Sexual harassment of a co-worker or a customer.

* Disclosure or unauthorized removal of company records or information.

* Possession or being under the influence of alcohol, drugs, or any intoxicant while on company property.

* Gross or willful negligence of duties.

* Theft or fraud of any type which results in a loss to the company.

* Serious misconduct.

* Two consecutive absences without advance notice.

* Conviction of a felony.

The above list may not be all-inclusive.

It is the Appellant's contention that the employee handbook she was issued upon her date of hire constituted an offer for a unilateral contract of employment, modifying the right of her employer to discharge her without cause. Her contention in this regard is based upon the fact that the handbook states that any firing except for those listed as grounds for immediate termination can take place only after two warnings. Specifically, the handbook states that "if you receive a warning for a performance problem you are expected to correct the situation."

The Appellees contend that the Appellant was an at-will employee, that the employee handbook did not create an implied contract, and that the Appellant was fired for gross negligence of duty. Appellees further contend that even if an implied contract modifying the Appellant's at-will status did exist, the disclaimers present in the handbook were sufficient to insulate them from liability for a wrongful termination.

## II.

We have repeatedly held that "[w]hen a contract of employment is of indefinite duration it may be terminated at any time by either party to the contract." Syl. Pt. 2, *Wright v. Standard Ultramarine & Color Co.*, 141 W.Va. 368, 90 S.E.2d 459 (1955). However, we have qualified that principle by stating that "[c]ontractual provisions [in an employee handbook] relating to job security may alter the at will status of a particular employee." Syl. Pt. 3, *Cook v. Heck's, Inc.*, 176 W.Va. 368, 342 S.E.2d 453 (1986). More recently, we held that an employee who "acknowledged the employment at will relationship, ... cannot claim a reasonable expectation that [the employer's] manual granted her the right to be discharged only for cause." *Suter v. Harsco Corp.*, 184 W.Va. 734, 737, 403 S.E.2d 751, 754 (1991).

In *Suter*, the disclaimer could not have been clearer. The employee in that case signed an employee application containing the following language:

> I UNDERSTAND AND AGREE THAT, IF HIRED, MY EMPLOYMENT IS FOR NO DEFINITE PERIOD AND MAY, REGARDLESS OF THE DATE OF PAYMENT OF MY WAGES AND SALARY, BE TERMINATED AT ANY TIME WITHOUT ANY PRIOR NOTICE.

*Id.* at 736, 403 S.E.2d at 753. In addition, while the handbook did discuss the classes of employee offenses and the corresponding discipline, it made clear that it was not a complete list by providing: " '[t]he enumeration of causes for discipline and discharge shall not limit the plant manager's right to discharge employees for any other cause.' " *Id.* n. 2.

The disclaimers in this case are not nearly so plain. The first disclaimer, printed in the front of the handbook itself, provided:

> The contents of this Handbook are presented as a matter of information only and are not to be understood or construed as a promise or contract between Fruth Pharmacy and its employees.

The second disclaimer, appearing on a handbook acknowledgement form signed by each

employee at some point after having received the handbook, provided:

> I have read and understand the Fruth Pharmacy Handbook and agree to abide by the guidelines set forth in it. I understand that the handbook is composed of general statements of company policy and Fruth Pharmacy retains the total discretion to modify these policies at anytime. Under no circumstances should this guide be considered a contract, implied or otherwise, between Fruth Pharmacy and its employees.

The record does not reflect that there were any disclaimers or other enunciation of strict at-will employment on the employment application. In the instant case, the trial court granted summary judgment for the Appellees, thus ruling that there existed no genuine issue of material fact as to the issue of whether there existed an implied contract of employment by virtue of the terms of the employee handbook the Appellant received from the Appellees upon the date of her hire.

 As we stated in syllabus point 4 of *Cook*, "[g]enerally, the existence of a contract is a question of fact to be determined by a jury." 176 W.Va. at 369, 342 S.E.2d at 454. Although we modified that general principle in *Suter* when language "is not definite enough to form the basis of a unilateral contract that would modify the employment at will relationship ..." 184 W.Va. at 736, 403 S.E.2d at 753. We believe that the provisions of the employee handbook at issue in this case present factual questions about which reasonable minds could differ and as such, there obviously exist genuine issues of material fact which preclude summary judgment.

Although the Appellees did arguably include two disclaimers in the handbook received by the Appellant in this case, we find that their presence in the Fruth handbook does not bar the Appellant's claim of an implied contract of employment as a matter of law.

 Clearly, the difference between the disclaimer in *Suter* and those in this case lies in the fact that the disclaimer in *Suter* stated explicitly that the employees in that case were employees at will and could be termi-

nated at any time and without any prior notice. Absent such specific disclaimer, the handbook in this case does not lend the employer in this instance the same protection. As we stated in syllabus point 4 of *Suter*:

> [a]n employer may protect itself from being bound by statements made in an employee handbook by having each prospective employee acknowledge in his employment application that the employment is for no definite period and by providing in the employment handbook that the handbook's provisions are not exclusive.

*Id.* at 735, 403 S.E.2d at 752. No such acknowledgement was made in this case.

*Suter* explains that a disclaimer in an employee handbook should inform the employees of two things: 1) that they are employees at will and can be terminated at any time; and 2) that the handbook is not a contract. The Fruth handbook does inform its employees that the handbook is not to be considered a contract, but it fails to state that its employees can be terminated at any time for any reason or no reason at all. It also fails to state that its employees are to be considered employees at will. It is in this regard that the Fruth handbook does not comply with the requirements set forth by this Court in *Suter*.

For these reasons, we reverse the lower court's ruling and remand this case to the lower court for an adjudication on the merits, both as to the existence of a contract, and, if it is determined such a contract existed, whether the Appellant's discharge was justified under the terms of the contract.

Reversed and remanded.

BROTHERTON, C.J., did not participate.

MILLER, Retired Justice, sitting by temporary assignment.

McHUGH, Justice, concurring:

I concur with the result reached by the Court in this case. However, by doing so, I stress that I have not abdicated the position I took in the dissenting opinion in *Suter v. Harsco Corp.*, 184 W.Va. 734, 738, 403 S.E.2d 751, 755 (1991).

Furthermore, in that dissent, noting *Toussaint v. Blue Cross & Blue Shield of Michigan*, 408 Mich. 579, 292 N.W.2d 880 (1980), I stated:

I concur with the observations in *Toussaint*, the seminal opinion on the 'personnel manual' or 'employee handbook' exception to at-will employment in the private sector, that a promise to terminate employment for cause only would be illusory if the employer were permitted to be the sole judge and final arbiter of the propriety of the discharge; accordingly, where the employee has secured a promise not to be discharged except for cause, he or she has contracted for *more than* the employer's promise to act perhaps mistakenly but in good faith. 408 Mich. at 621, 623, 292 N.W.2d at 895, 896.

*Suter v. Harsco Corp.*, 184 W.Va. at 744, 403 S.E.2d at 761.

I am authorized to state that Justice CLECKLEY joins in this concurring opinion.