542 S.E.2d 842

**Holly O. BINE and Shirley Bine, Plaintiffs Below, Appellants,**

v.

**David C. OWENS, K.M. Wilson, G. Allan Brown, Rod Null, Thomas Jefferson, Mobay Chemical Corporation/Miles, Incorporation, Defendants Below, Appellees.**

No. 27685.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 6, 2000.

Decided Dec. 4, 2000.

Concurring and Dissenting Opinion of Justice McGraw Jan. 12, 2001.

J. Michael Benninger, Esq., Wilson, Frame, Benninger & Metheney, PLLC, Rebecca Oblak Zuleski, Esq., Furbee, Amos, Webb & Critchfield, PLLC, Morgantown, West Virginia, Attorneys for Appellants.

Larry W. Blalock, Esq., Whitney G. Clegg, Esq., Jackson & Kelly, PLLC, New Martinsville, West Virginia, Attorneys for Appellees.

PER CURIAM:

This is an appeal by Holly O. Bine and Shirley Bine, his wife, from an order of the Circuit Court of Marshall County granting Bayer, Inc., and other defendants, summary judgment in an action brought by the Bines growing out of the firing of Holly O. Bine by his employer, Bayer, Inc.[1] In their complaint,

the Bines had claimed that Holly O. Bine's termination was wrongful in that Bayer, Inc., had failed to follow disciplinary procedures contained in its own employee handbook. They also had claimed that he had been defamed and had been placed in false light, that he had been subjected to intentional infliction of emotional distress, and that he had not received termination pay in a timely manner as required by West Virginia's Wage Payment and Collection Act, W. Va.Code 21–5–1, *et seq.* On appeal, the Bines claim that the circuit court erred in entering summary judgment inasmuch as there were material questions of fact remaining in the case at the time summary judgment was entered.

## I.

## FACTS

In 1994, Bayer, Inc., installed a stationary video surveillance system on the parking lot of its New Martinsville, West Virginia, plant after receiving a report of vandalism on that lot. Subsequently, an hourly security guard, equipped with a hand held video camera, was also stationed on the lot.

In the early hours of September 16, 1994, the security guard observed an individual walking in a suspicious manner around a vehicle which had previously been vandalized. The security guard believed that the individual was Holly O. Bine. A subsequent investigation showed that the vehicle had been freshly scratched.

The incident was reported, and the management of Bayer, Inc., proceeded to review the incident. Management concluded that Mr. Bine was in fact the individual who had scratched the vehicle and informed Mr. Bine of this conclusion. Mr. Bine denied that he had damaged the vehicle and asked the identity of the guard and asked for an opportunity to review the videotape. Management denied these requests and directed Mr. Bine to take a leave of absence while a further investigation was conducted. Subsequently, Mr. Bine's employment was terminated effective October 15, 1994.

---

1. It appears that Holly O. Bine was originally employed by Mobay Chemical Corporation, but that it was a part, or later became a part, of Bayer, Inc. For the sake of simplicity, the employer will be referred to simply as Bayer, Inc.

Following his termination, Mr. Bine and his wife instituted the civil action involved in the present proceeding. As has been previously indicated, they claimed that Mr. Bine had not been accorded the benefit of the procedures contained in Bayer, Inc.'s, employee handbook. They also claimed that Bayer, Inc., had defamed Holly O. Bine, had presented him in a false light, and had intentionally inflicted emotional distress upon him. Lastly, they claimed that his final wages had not been paid in accordance with West Virginia's Wage Payment and Collection Act.

After extensive discovery, Bayer, Inc., and the other defendants moved for summary judgment in the action. The circuit court took the motion under consideration and on September 10, 1999, granted the relief sought. It is from that action that the present appeal is brought.

## II.

### STANDARD OF REVIEW

■ This Court has indicated that a summary judgment should be reviewed *de novo*. *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). Further, the Court has indicated that: "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syllabus Point 3, *Aetna Casualty & Surety Company v. Federal Insurance Company of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963). Lastly, the Court has stated that in determining whether there is a genuine issue of material fact in a case, the Court will construe the facts in the light most favorable to the losing party. *Alpine Property Owners Association v. Mountaintop Development Company*, 179 W.Va. 12, 365 S.E.2d 57 (1987).

## III.

### DISCUSSION

### A.

#### A Wrongful Firing Issue

■ One of the Bines' principal assertions in the present appeal is that Bayer, Inc., issued an employee handbook which detailed procedures to be followed when employee discipline or discharge was contemplated. They claim that Bayer, Inc., improperly and wrongfully failed to follow the procedures specified in the handbook in terminating Mr. Bine's employment. Bayer, Inc., on the other hand, claims that Holly O. Bine was an at-will employee and that since this was the situation, he could legally be fired without being afforded the benefit of the handbook procedure.

■ In *Cook v. Heck's, Inc.*, 176 W.Va. 368, 342 S.E.2d 453 (1986), this Court stated that in the realm of the employer-employee relationship, West Virginia is an "at-will" jurisdiction, that is, that, in the absence of some contractual or legal provision to the contrary, an employment relationship may be terminated, with or without cause, at the will of either the employer or the employee. The *Cook* case, however, proceeded to hold that a provision in an employee handbook may alter the at-will nature of an employment relationship if there is a definite promise in the handbook by the employer not to discharge the covered employee except for specified reasons. The Court specifically stated:

> The inclusion in the handbook of specified discipline for violations of particular rules accompanied by the statement that the disciplinary rules constitute a complete list is *prima facie* evidence of an offer for a unilateral contract of employment modifying the right of the employer to discharge without cause.

176 W.Va. at 374, 342 S.E.2d at 459.

■ In the later case of *Suter v. Harsco Corporation*, 184 W.Va. 734, 403 S.E.2d 751 (1991), the Court reiterated the principle that a handbook provision may alter an at-will relationship, but stated further that: "An employer may protect itself from being bound by any and all statements in an employee handbook by placing a clear and prominent disclaimer to that effect in the handbook itself." Syllabus Point 5, *Suter v. Harsco Corporation, id.*

Although the Bines in the present case claim that the handbook issued to Mr. Bine altered the at-will nature of Mr. Bine's employment, and implicitly established that Mr. Bine's employment could only be terminated

by the procedures established in the handbook, the record shows that the handbook issued to Mr. Bine contained a prominent disclaimer indicating that nothing in the handbook was intended to alter Mr. Bine's at-will employment relationship. Specifically, the handbook stated:

> The manual is not intended to alter the employment-at-will relationship in any way. Moreover, it neither creates an employment contract or term nor limits the reasons or procedures for termination or modification of the employment relationship.

In light of the fact that *Suter v. Harsco Corporation, id.,* holds that a disclaimer such as the one used by Bayer, Inc., relieves the employer from being bound by the statements in the handbook, this Court concludes that Bayer, Inc., was not bound by disciplinary procedures contained in its handbook when it discharged Mr. Bine and that the Bines' claim that Mr. Bine was improperly discharged because Bayer, Inc., did not follow the procedures in the handbook is without merit.[2]

## B.

### *The Defamation, False Light Claims, and Intentional Infliction of Emotional Distress Claims*

■ As has previously been indicated, the Bines also claim that Mr. Bine was defamed and presented in a false light by Bayer, Inc., when he was discharged.

■ In *Crump v. Beckley Newspapers, Inc.,* 173 W.Va. 699, 320 S.E.2d 70 (1983), this Court explained that to have a defamation claim, a plaintiff must show that false and defamatory statements were made against him, or relating to him, to a third party who did not have a reasonable right to know, and that the statements were made at least negligently on the part of the party making the statements, and resulted in injury to the plaintiff. The elements were summarized in Syllabus Point 1 of *Crump v. Beckley Newspapers, Inc., id.,* as follows:

> The essential elements for a successful defamation action by a private individual are (1) defamatory statements; (2) a non-privileged communication to a third party; (3) falsity; (4) reference to the plaintiff; (5) at least negligence on the part of the publisher; and (6) resulting injury.

Mr. Bine, in the present case, takes the position that he had not vandalized a fellow employee's vehicle as claimed by Bayer, Inc., and that any assertion that he did is false. The record further indicates that at the time Mr. Bine was terminated, rumors began spreading among Mr. Bine's fellow employees.[3] To quash these rumors, Bayer, Inc., apparently notified certain employees that Mr. Bine had been engaged in vandalism. On appeal, the Bines take the position that the spreading of this "false" information constituted defamation.

In this Court's view, the Bines' claim of defamation raises issues of material fact, or at least questions which merit further factual inquiry. As indicated in *Crump v. Beckley Newspapers, Inc., id.,* for defamation to exist, there must be a false statement. It is the clear import of Mr. Bine's statements that he did not commit the vandalism charged. Further, the deposition testimony of certain witnesses suggests that Mr. Bine could not, because of his character, have committed the vandalism charged. On the other hand, cer-

---

**2.** In conjunction with this claim, the Court also notes that when he was employed, Holly O. Bine signed an agreement whereby he agreed to limit the dissemination of confidential information to which he became privy during employment. On appeal, the Bines argue that the employee handbook, rather than this agreement, altered Holly O. Bine's at-will employment status.

**3.** The record is unclear as to what the exact rumors were. According to the deposition of one Bayer, Inc., manager:

> After we had had our staff meeting that Wednesday, we were—our approach was, we weren't going to publicize anything on this.

Holly was on inactive status until otherwise. I was quite upset at that staff meeting from some of the people that were spreading rumors. There were some rumors being spread. I don't remember all the different people involved.

At another point, he testified:

> And that it wasn't an easy situation for anyone, but we had to work through it and that I was informing them because I was tired of the rumors. I did not want them to go any further with it. It was to help them themselves come to grips with what was going on and get control back in the department because there was a lot of confusion. And that's as far as it went.

tain evidence adduced by Bayer, Inc., suggests that he was the culprit. An additional question is whether Bayer, Inc., was privileged or justified in spreading the charge of vandalism, if false, among its employees.

Where there are questions of this type, *Aetna Casualty & Surety Company v. Federal Insurance Company of New York, supra,* indicates that summary judgment is improper.

■■■ Two additional claims asserted by the Bines are that Bayer, Inc., placed Mr. Bine in a false light and that Bayer, Inc., intentionally inflicted emotional distress upon him. In *Crump v. Beckley Newspapers, Inc., supra,* the Court discussed false light claims and stated in Syllabus Point 12: "Publicity which unreasonably places another in a false light before the public is an actionable invasion of privacy." The Court also indicated in Syllabus Point 14 that a plaintiff in a false light case may not recover unless the false light in which he was placed would be highly offensive to a reasonable person.

As in the case of the defamation claim, this Court believes that there is question of fact as to whether or not Bayer, Inc., truly or falsely accused Mr. Bine of vandalizing a vehicle. The spreading of such information, if false, could constitute a valid false light claim. However, as previously indicated, in this Court's view, the truth or falsity of the charge remains a factual issue in the case. Where there is such an issue, *Aetna Casualty & Surety Company v. Federal Insurance Company of New York, supra,* holds that summary judgment is improper.

■■■ In Syllabus Point 3 of *Travis v. Alcon Laboratories, Inc.,* 202 W.Va. 369, 504 S.E.2d 419 (1998), this Court examined what was necessary to establish an intentional infliction of emotional distress claim, such as the one asserted by the Bines in the present case. The Court stated:

> In order for a plaintiff to prevail on a claim for intentional or reckless infliction of emotional distress, four elements must be established. It must be shown: (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted reckless-

ly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

As has previously been suggested, this Court believes that there is some question of fact as to whether Mr. Bine did, in fact, vandalize a fellow employee's vehicle and some question as to whether the dissemination of information that he had been terminated because of such conduct was justified or privileged. The Court believes that the record as developed fails to show conclusively either that Bayer, Inc., did intentionally or recklessly inflict emotional distress as laid out in *Travis v. Alcon Laboratories, Inc., id.,* or that it did not. Again, under such circumstances, *Aetna Casualty & Surety Company v. Federal Insurance Company of New York, supra,* would suggest that summary judgment is inappropriate.

### C.

### *The Wage Payment and Collection Act Claim*

■■■ The Bines' final claim in the present appeal is that the court erred in entering summary judgment on the appellants' Wage Payment and Collection Act claim. Bayer, Inc., asserts that all wages due Mr. Bine were paid in a timely fashion as contemplated by the Wage Payment and Collection Act after Mr. Bine was dismissed. Mr. Bine claims the contrary. Copies of checks apparently given to Mr. Bine are attached as exhibits to the documents filed in the present case. However, the copies are so illegible that this Court cannot tell when they were issued and, as a consequence, it is impossible for this Court to examine the factual basis of the appellants' claim that summary judgment was improperly entered on that point. In view of this, this Court believes that it cannot rule that the trial court erred in granting summary judgment on the Wage Payment and Collection Act claim.

In light of all the above, the judgment of the Circuit Court of Marshall County as it relates to the Bines' wrongful discharge claims and their Wage Payment and Collection Act claim, should be affirmed, and that judgment should be reversed insofar as it relates to the defamation, false light and intentional infliction of emotional distress claims. On remand, the circuit court should proceed with the development of the case on the defamation, false light and intentional infliction of emotional distress claims.

For the reasons stated, the judgment of the Circuit Court of Marshall County is affirmed in part, and reversed in part, and this case is remanded for further development.

Affirmed, in part, reversed, in part, and remanded with instructions.

McGRAW, Justice, concurring in part and dissenting in part:

(Filed Jan. 12, 2001)

I concur that the lower court erred in granting summary judgment against the Bines on their claims of defamation, false light, and intentional infliction of emotional distress. However I disagree with the majority decision regarding the wrongful discharge and Wage Payment and Collection Act claims.

As for the Wage Payment and Collection Act claim, the majority notes that the copies of checks issued by Mr. Bine's employer are illegible and that therefore this Court cannot say that lower court erred.

As we have often noted: "The West Virginia Wage Payment and Collection Act is remedial legislation designed to protect working people and assist them in the collection of compensation wrongly withheld." Syllabus, *Mullins v. Venable*, 171 W.Va. 92, 297 S.E.2d 866 (1982); syl. pt. 3, *Jones v. Tri–County Growers, Inc.*, 179 W.Va. 218, 366 S.E.2d 726 (1988); syl. pt. 3, *Lipscomb v. Tucker County Com'n.*, 206 W.Va. 627, 527 S.E.2d 171 (1999). As such, the Act should be liberally construed to favor the worker. Thus I dissent to the majority's conclusion that the lack of evidence that the company violated the act should suffice for summary judgement; instead we should demand affirmative evidence that the company did not violate the Act.

As for Mr. Bine's claim of improper discharge from his employment, I disagree with the majority that the simple disclaimer in the front of a handbook may eviscerate the protections such a handbook affords an employee. Handbooks should not be rendered meaningless by mere caveat: "As we explained in *Cook* [*v. Heck's Inc.*, 176 W.Va. 368, 342 S.E.2d 453 (1986)], promises made in employee handbooks may alter the 'at will' nature of employment, and create a binding unilateral contract." *Lipscomb v. Tucker County Com'n.*, 206 W.Va. 627, 630, 527 S.E.2d 171, 174 (1999).

The handbook describes the conduct expected of the employee, so that he or she may remain in the good graces of the employer. The handbook also sets forth the corresponding conduct expected of the employer. We have noted that the employer may maintain the right to change or alter the policies expressed in the handbook; but this does not mean that an employer should completely abandon its own avowed polices for the sake of convenience:

Retaining the right to make changes, however, does not necessarily mean promises explicitly or implicitly made by an employer through its handbook are not enforceable, at least until such time as they are in fact changed. It is, for example, a basic notion of due process of law that a governmental agency must abide by its own stated procedures even though it is under no constitutional obligation to provide the procedures in the first place and even though it can change the procedures at any time; so long as the procedures are in place, the agency must follow them. E.g., *United States v. Nixon*, 418 U.S. 683, 695–97, 94 S.Ct. 3090, 3101–02, 41 L.Ed.2d 1039, 1057–58 (1974); There is no reason why this basic principle of fairness should not also imbue our interpretation of employment contracts. Finally, we note our decision in *Dent, supra*, [*v. Fruth*, 192 W.Va. 506, 453 S.E.2d 340 (1994)] held that language substantially similar to the alleged disclaimer in this case was ineffective in relinquishing the employer from contractual liability.

*Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 65, 459 S.E.2d 329, 342 (1995) (citations and footnote omitted). Because I feel the majority opinion undermines the importance of employee handbooks, and because of my aforementioned disagreement with the majority's conclusion regarding the Wage Payment and Collection Act, I respectfully dissent to those aspects of the majority opinion.