**Aram HESSAMI, Individually and as Next Friend of Cyrus Morgan and Sarah Morgan, Minors, Plaintiffs,**

v.

**CORPORATION OF RANSON, a West Virginia Municipality, Perry M. Ballenger, Charles Slusher, and Ranson Park and Playground Inc., a West Virginia Corporation, Defendants.**

No. CIV. A. 3:00–CV–71.

United States District Court,
N.D. West Virginia,
Martinsburg.

Oct. 3, 2001.

Aram Hessami, Charles Town, WV, Pro se.

Robert D. Aitcheson, Charles Town, WV, for Plaintiff.

Monica N. Haddad, MacCorkle, Lavender & Casey, Morgantown, WV, Macel E. Rhodes, Zimmer Kunz, PLLC, Morgantown, WV, Craig P. Erhard, Fairmont, WV, for The Corp. of Ranson.

Macel E. Rhodes, Zimmer Kunz, PLLC, Morgantown, WV, for Perry M. Ballenger.

Lucien G. Lewin, Bridget M. Cohee, Steptoe & Johnson, Martinsburg, WV, Dale A. Buck, Martin & Seibert, for Charles Slusher and Ranson Park & Playground.

## MEMORANDUM OPINION AND ORDER

BROADWATER, District Judge.

The above styled matter is now before the Court on joint motion for summary judgment by the defendants Perry M. Ballenger, Corporation of Ranson, Charles Slusher, and Ranson Park and Playground, Inc.[1] The plaintiffs have opposed both motions. For the following reasons, the Court finds that defendants' motion for summary judgment should be granted.

## I. FACTUAL BACKGROUND

This case arises from a trespass and arrest that occurred on July 1, 1998, at Ranson Park and Playground, Inc., a private park located in Ranson, West Virginia. The plaintiffs, Aram Hessami ("Hessami") and his minor children, Cyrus Morgan and Sarah Morgan, together with another adult, were playing basketball on the lower court at Ranson Park and Playground when they were approached by a contractor hired to cut the lawn. The contractor requested that the party move to another court to avoid harm from debris thrown by the mowers. In response, the plaintiffs relocated to the other side of the basketball court, but the contractor believed they could still be harmed by flying debris.

The contractor told the park president, Charles Slusher ("Slusher"), that he would be unable to mow the lawn because his contractor's insurance did not cover liability in the instance of injury. In an effort to assist the contractor, Slusher approached the group and asked the plaintiffs to move completely from the basketball court to another court located further away from danger. Hessami refused to move his party because he felt they were far enough away from the mowers to avoid danger. Slusher informed Hessami that he was president of the park and that he had the authority to request their move, as well as the authority to close the park if that were necessary. When Hessami continued to question his authority, Slusher called the police to resolve the problem.

When Slusher called the police, he spoke with the secretary and requested that a police officer come to Ranson Park and Playground. Perry M. Ballenger ("Ballenger"), in his capacity as a police captain for the defendant Corporation of Ranson, responded to the call. When he arrived, Ballenger spoke with Slusher, who informed him that the contractors were trying to mow the lawn but Hessami and his party would not move to a safe distance. Ballenger spoke with Hessami and explained that Slusher, as the park president, had the authority to request them to move. Hessami told the officer that he did not want to move because the mowers had not finished cutting the grass on the opposite end of the court. Additionally, he stated that his children only needed to score two more points to finish the game. There is some discrepancy as to whether

1. The Court, *sua sponte,* is combining the motion for summary judgment filed by defendants Charles Slusher and the Ranson Park and Playground (Doc. # 50), with the motion filed by defendants Perry M. Ballenger and the Corporation of Ranson (Doc. # 63). For clarity, the Court will first address the claims asserted against defendant Ballenger and the Corporation of Ranson, and then address the claims asserted against defendant Slusher and the Ranson Park and Playground.

Hessami and his party were given five additional minutes to finish their game. Nevertheless, after some time passed with no end of the game, Ballenger advised Hessami that he would have to leave the basketball court or be arrested.

Hessami inquired as to who would be arrested. Ballenger indicated that because Hessami was the individual causing the trouble, he would be the only one arrested. When Hessami did not move his party, Ballenger pulled out his cuffs and reached for Hessami. To avoid contact with the officer, Hessami backed away. Using some force, Ballenger eventually arrested Hessami for trespassing.

As a result of his arrest on July 1, 1998, Hessami, on behalf of himself and his minor children, filed this action pursuant to 42 U.S.C. § 1983. He alleged that defendants Corporation of Ranson and Captain Ballenger violated his rights under the Fourth Amendment of the United States Constitution. Hessami also alleged that defendant Slusher, a private citizen, and Ballenger conspired to deprive him of his civil rights. The plaintiffs also claimed damages from Ballenger and Slusher for the West Virginia common law tort of outrage and intentional infliction of emotional distress due to the arrest of Hessami. The defendants now move for summary judgment on all claims.

## II. STANDARD OF REVIEW

Summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[2] The party seeking summary judgment bears the initial burden of showing the absence of any issues of material fact.[3]

However, the party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of [the] pleading, but must set forth specific facts showing that there is a genuine issue for trial."[4] "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial-whether, in other words, there are any genuine factual issues that can be properly resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[5]

In *Celotex*, the Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[6] Summary judgment is not appropriate until after the nonmoving party has had sufficient opportunity for discovery.[7] Additionally, "[o]n

**2.** Fed.R.Civ.P. 56(c).

**3.** *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

**4.** *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**5.** *Id.* at 250, 106 S.Ct. 2505. *See also Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir.1979) (holding that "summary judgment 'should be granted only where it is

perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law'" (quoting *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir.1950))).

**6.** *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

**7.** *See Oksanen v. Page Memorial Hosp.*, 912 F.2d 73, 78 (4th Cir.1990), *superseded on rehearing*, 945 F.2d 696 (4th Cir.1991).

summary judgment the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." [8]

### III. ANALYSIS

A. *Captain Perry M. Ballenger and the Corporation of Ranson.*

■ In any § 1983 action, the initial inquiry must focus on whether two essential elements are present: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived another person of his rights, privileges, or immunities secured by the Constitution or laws of the United States.[9]

It is evident, and there is no dispute, that Ballenger was a state actor acting in his capacity as Captain for the police department for the Corporation of Ranson when he arrested Hessami for trespassing on July 1, 1998. Hessami alleges that Ballenger deprived him of his rights by using excessive force to conduct an unlawful arrest predicated on discrimination. The plaintiffs, however, have failed to prove such claims.

#### 1. Arrest for Trespass.

■ In West Virginia, the crime of trespass is defined as a refusal of an order to leave a property where the owner, tenant or agent orders a person to leave.[10] It is undisputed that Slusher, as president and agent of the privately owned Ranson Park and Playground, Inc., made several requests of Hessami and his party to leave the basketball court for their own safety so that the maintenance crew could cut the grass. Upon his consistent refusal to relocate, Slusher called the police to enforce his request. Captain Ballenger of the police department for the Corporation of Ranson, responded to that call and was advised by Slusher of the order to Hessami that his group leave the lower courts. Ballenger informed Hessami that he must leave or be arrested. Based on Hessami's refusal to leave the lower courts, Ballenger lawfully arrested him, without a warrant, for trespassing.[11]

Hessami asserts that the arrest was unlawful because it was predicated on racial discrimination rather than trespassing. To support his claim, Hessami relies upon the fact that he was the only member of his group arrested. However, upon Hessami's inquiry as to who faced arrest if they did not move, Ballenger told Hessami he was the individual causing the trouble and he would be the individual arrested if they did not relocate.

Aside from Hessami's allegations of racial discrimination, he provides no evidence that his arrest was provoked by any other means than his trespass against Ranson Park & Playground, Inc. Allegations are not enough to successfully oppose a summary judgment motion under the present circumstances.

#### 2. Use of Excessive Force.

■ Hessami asserts that excessive force was used by Ballenger to execute his arrest. He points to the officer's attempt to swipe his legs out from underneath him

---

**8.** *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citation omitted).

**9.** 42 U.S.C. § 1983.

**10.** West Virginia Code Section 61–3B–3(b).

**11.** *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (holding that a warrantless arrest is valid provided the officer has probable cause to believe the individual has committed an offense).

to gain leverage and the tight application of the handcuffs. A lawful arrest is often attended by unpleasant circumstances, such as restraint and some degree of force necessary for the protection of the officer and the person arrested.[12] However, unpleasant circumstances do not render an arrest actionable. When evaluating the force used by an officer to make an arrest, the standard is whether the officer's actions are objectively reasonable in light of the facts and circumstances confronting him, rather than the underlying intent or motivation of the officer.[13]

It is undisputed that when Ballenger approached Hessami to execute the arrest, Hessami moved backwards to avoid contact with the officer. Hessami was on notice that the officer was effectuating an arrest. Ballenger provided Hessami an ultimatum of either moving or being arrested. When he failed to move, Ballenger pulled out his cuffs and reached for Hessami. In light of the plaintiff's posturing, which indicated that he was initially attempting to resist the officer's arrest, it became necessary for Ballenger to use some degree of physical coercion to effect the arrest.[14] When Hessami was asked by the officer if he was in fact resisting, only then did Hessami relent to Ballenger and allow him to peacefully apply the handcuffs.

■ Hessami also asserts that because the handcuffs were applied in a tight manner, this contributed to the excessive force used by Ballenger. However, allegations that handcuffs are too tight are insufficient to establish a claim of excessive force where no resulting injuries occurred.[15]

Therefore, because the use of force by Ballenger is judged by the viewpoint of a reasonable officer in the same situation and not that of the suspect, it is reasonable to assume that when faced with a suspect moving backwards to avoid arrest, Ballenger applied only the force necessary to effectuate the arrest. This is supported by the lack of injuries sustained by Hessami during the altercation.

### 3. Custom and Policy of the Corporation of Ranson to Discriminate.

■ Under a § 1983 action, to sustain a claim against the Corporation of Ranson, a municipality, Hessami must establish that the Corporation of Ranson caused deprivation of a federally protected right through the use of a custom or policy which permitted Ballenger to discriminate and perpetuate unlawful arrests.[16] Municipal policies can be found in written ordinances and regulations, in certain affirmative decisions of individual policymaking officials, or in certain omissions on the part of policing making officials that manifest indifference to the rights of citizens.[17] A municipal custom, however, may arise if a practice is so persistent and widespread and so permanent and well settled as to

**12.** *See Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989).

**13.** *Id.* at 397, 109 S.Ct. 1865.

**14.** *See Terry v. Ohio,* 392 U.S. 1, at 22–27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

**15.** *Cooper v. City of Virginia Beach, Virginia,* 817 F.Supp. 1310, 1314 (E.D.Va.1993), *see also Carter v. Morris,* 164 F.3d 215, 219 fn. 3 (4th Cir.1999).

**16.** *Carter v. Morris,* 164 F.3d 215 (4th Cir. 1999), see also *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), *Pembaur v. City of Cincinnati,* 475 U.S. 469, 483–84, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), *City of Canton v. Harris,* 489 U.S. 378, 388–89, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

**17.** *Id.* at 218.

constitute a custom or usage with the force of law.[18]

To illustrate that the police department of the Corporation of Ranson engaged in a discriminatory practice, Hessami alleges in his Complaint that the police department had knowledge that Ballenger had a propensity for improper and excessive use of authority and force. Yet, Hessami has failed to produce even a scintilla of evidence that such a propensity exists on the part of Ballenger. Hessami has produced no records of complaints against Ballenger that suggests a pattern of behavior that may be characterized as a custom. Therefore, because no propensity has been established, the plaintiffs cannot prove that the police department for the Corporation of Ranson had knowledge that such existed.

4.  *State Common Law Claim of Intentional Infliction of Emotional Distress.*

In West Virginia, in order for Hessami to prevail on a claim for intentional or reckless infliction of emotional distress, four elements must be established. It must be shown: (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.[19]

The West Virginia Supreme Court has held that the defendant's conduct must truly offend community notions of acceptable behavior and must be more than unreasonable, unkind and unfair. Specifically, conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, to be regarded as atrocious, and utterly intolerable in a civilized community.[20]

Clearly the plaintiffs have failed to illustrate that this arrest was anything but lawful. Accordingly, the elements necessary to sustain an action are not present. Hessami had several occasions to avoid the ultimate outcome and failed to do so. He received several instructions from Slusher, the President of Ranson Park and Playground, Inc., to relocate to another court out of harms way of the mowers. Additionally, he received a warning from Captain Ballenger to leave the court or be arrested. Only after Hessami remained on the basketball court, obstructing the contractor's ability to cut the grass, did Ballenger attempt to arrest him. Hessami's response to the officer's approach was to back away. Ballenger employed only the requisite amount of force necessary to effectuate this arrest—bringing no physical harm to the Plaintiff.

Assuming *arguendo* that the arrest was unlawful, there is no evidence that Hessami suffered any emotional distress. Hessami sustained no injuries and received no medical treatment or counseling. Therefore, there is no evidence that the emotional distress which he allegedly suffered was so severe that a reasonable person could not be expected to endure it.

---

18. *Id.*

19. *Bine v. Owens,* 208 W.Va. 679, 542 S.E.2d 842 (2000).

20. *Travis v. Alcon Laboratories, Inc.,* 202 W.Va. 369, 375, 504 S.E.2d 419, 425 (1998).

Hessami has failed to establish any facts to support his claim for the tort of outrage.

The plaintiffs have failed to present any evidence that the arrest of Hessami was anything but lawful. Moreover, they have failed to prove the arrest was conducted with the use of excessive force. As the test is objective from the position of the arresting officer, the plaintiffs have also failed to illustrate what a reasonable officer in the same situation would have done. Additionally, the plaintiffs have provided no evidence that the Corporation of Ranson employed the use of custom or policy to violate the rights of individuals or failed to train its officers. They have provided no evidence to support their claim that Ballenger has a propensity for the use of excessive force or authority. Finally, the Plaintiffs have provided no evidence to meet the requirements for a claim of intentional infliction of emotional distress.

*B. Conspiracy Claim Between Charles Slusher, of the Ranson Park and Playground and Captain Ballenger.*

■ It is evident that Slusher was a private citizen acting in his capacity as president of a privately owned park when he asked the plaintiffs to leave. However, Hessami alleges that Slusher conspired with a state actor, Captain Ballenger, to deprive him of his constitutional rights.

■ A private party involved in a conspiracy with a state actor can be liable under § 1983. However, to sustain such a claim, the plaintiff must allege facts showing an agreement or meeting of the minds between the state actor and the private actor to engage in a conspiracy to deprive the plaintiff of a constitutional right.[21] To establish liability through conspiracy, a plaintiff must demonstrate that: (1) a state official and private individual reached an understanding to deprive the plaintiff of his constitutional rights, and (2) the individual was a willful participant in joint activity with the State or its agents.[22]

■ The Supreme Court has previously held that a private party's mere invocation of state legal procedures is not enough to constitute joint participation or conspiracy with state officials under § 1983.[23] More specifically, "mere furnishing of information to police officers who take action thereon does not constitute joint action under color of state law which renders a private actor liable under § 1983."[24]

The plaintiffs have the burden to produce details of such a conspiracy because mere conclusory, vague and general allegations of such an agreement are not enough and are properly dismissed.[25] Here, the plaintiffs base their claim of conspiracy on three brief verbal exchanges between defendants Ballenger and Slusher, which the plaintiffs allege provided an opportunity for them to reach an understanding to deprive Hessami of his rights. The first exchange was the 9–1–1 call placed by Slusher and received by the office secretary, not Captain Ballenger. The substance of the second conversation was limited to Ballenger's inquiry as to why the police were called. On the occasion of the

21. *See Marion v. Groh,* 954 F.Supp. 39, 43 (D.Conn.1997).

22. *See Fries v. Helsper,* 146 F.3d 452, 457 (7th Cir.1998).

23. *See Lugar v. Edmondson Oil Co., Inc.,* 457 U.S. 922, 939, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982).

24. *Lee v. Town of Estes Park,* 820 F.2d 1112, 1115 (10th Cir.1987) (citing *Cruz v. Donnelly,* 727 F.2d 79 (3rd Cir.1984)).

25. *E.g., Dwares v. City of New York,* 985 F.2d 94, 99 (2d Cir.1993).

final conversation, Slusher relayed he would give the plaintiffs five additional minutes to complete their game and then they would have to move. According to the depositions, there is no suggestion that there was any arrangement between Slusher and Ballenger, or that they were somehow acting as a team. Both Slusher and Ballenger asserted there was no such exchange. They denied the existence of an agreement and claim there was only a brief exchange of information between the two. The depositions are insufficient to raise a material fact as to the existence of an agreement between Slusher and Ballenger.

■ As mere allegations of joint action or a conspiracy do not demonstrate that the defendants acted under color of state law and are not sufficient to survive a motion for summary judgment, there must be evidence of a concerted effort between the state actor and the private individual.[26] The plaintiffs have produced no evidence of either an agreement or understanding between the defendants. In the absence of such proof, the summary judgment motion of the defendant Charles Slusher should be granted.

### IV. CONCLUSION

The plaintiffs have failed to establish a prima facie case of a § 1983 violation because they produced no evidence that their federal rights were violated by the arrest of Aram Hessami and no proof of either an agreement or an understanding between the defendants Charles Slusher and Captain Ballenger to deprive Hessami of his Constitutional rights. Additionally, Captain Ballenger is immune from personal liability from the plaintiffs' claims. Inasmuch as there is no genuine issue of mate-rial fact, the Court hereby **ORDERS** that the joint motion for summary judgment of defendants Perry M. Ballenger, Corporation of Ranson, Charles Slusher, and the Ranson Park and Playground, Inc. be **GRANTED.**

There being nothing further in this matter the Clerk is hereby **ORDERED** to Dismiss this case from the active docket of the Court.[27]

The Clerk is directed to transmit true copies of this Order to all counsel of record herein.

**26.** *Fries v. Helsper,* 146 F.3d 452, 458 (7th Cir.1998).

**27.** Doc. # 50 and Doc. # 63.