NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0012n.06

No. 08-6528

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jan 06, 2010
LEONARD GREEN, Clerk

TIMOTHY PARSONS,                )
                                )
    Plaintiff-Appellant,        )
                                )  ON APPEAL FROM THE UNITED
v.                              )  STATES DISTRICT COURT FOR THE
                                )  EASTERN DISTRICT OF KENTUCKY
FEDEX CORPORATION,              )
                                )
    Defendant-Appellee.         )  OPINION
                                )

**Before: GRIFFIN and KETHLEDGE, Circuit Judges; and CARR, District Judge.**[*]

**JAMES G. CARR, DISTRICT JUDGE**.  This is a diversity employment case arising from the discharge of plaintiff Timothy Parsons from his position as a courier at the Huntington, West Virginia station of the defendant Federal Express Corporation (FedEx). Plaintiff asserts three causes of action against FedEx: 1) defamation; 2) retaliatory discharge; and 3) intentional infliction of emotional distress.

Pending is an appeal from an order granting summary judgment in favor of defendant and against plaintiff on all claims.

For the reasons that follow, we **AFFIRM** the district court's grant of summary judgment.

---

[*] The Honorable James G. Carr, Chief Judge of the Northern District of Ohio, sitting by designation.

**Background**

FedEx employed Parsons as a courier from November 11, 1996, to March 20, 2006, at its Huntington, West Virginia station. Throughout the Summer of 2005, Parsons complained to management that packages were disappearing from trucks and reappearing days later. He also claims that he saw employees opening packages without management approval.

On September 7, 2005, FedEx suspended Parsons after discovery of an opened package and pornographic material in the truck he usually drove. On the same day, FedEx received a complaint from a customer that several of the customer's prescription narcotics shipments had been replaced with baby aspirin.

Consistent with FedEx policies, the company, while it investigated the customer's complaint, placed Parsons on investigative suspension. Though FedEx questioned other employees about the package, it only suspended Parsons. Unable to determine responsibility for the opened package and pornography, FedEx reinstated Parsons.

During the investigation, Parsons informed FedEx's Senior Security Specialist, Helmut Hagan, that he had, at one point, been taking prescription narcotics. Consistent with FedEx policies, Hagan notified management of this fact.

On receiving notice of Parsons' use of narcotics, and again consistent with company policies, a Medical Review Officer began an evaluation of Parsons. The evaluation included a request for medical records pertaining to prescription narcotic use.

Pending a medical examination relating to his prior use of prescription narcotics, Parsons lost his Department of Transportation (DOT) certification. Plaintiff claims that management had been previously aware of this drug use, but had continued to let him make deliveries.

2

Because his disqualification from driving involved medical issues, Parsons received paperwork to apply for short term disability.[1] The Medical Review Officer ultimately cleared Parsons to return to work. FedEx reinstated him and he returned to work.

FedEx policy bans suspended employees from entering the workplace without prior approval of a manager. While under suspension, Parsons entered the station without permission. He received a warning letter for failure to follow management orders.[2]

FedEx also has a policy that the details of an investigation remain confidential.[3] Parsons filed a series of internal EEO complaints regarding the scope and nature of this initial investigation.

Parsons returned to work on or about December 19, 2005. On January 4, 2006, FedEx transferred Parsons to a new route because a customer had complained that Parsons had insinuated he was going to blow up the customer's business.

Parsons had difficulty delivering packages on the new route. He entered "DEX 03" codes on twenty-six packages and returned them to the station.

---

[1] Parsons alleges that the HCMP manager for FedEx threatened him with disciplinary action if he did not knowingly falsify his medical leave documents. Parson fails, however, to submit any admissible evidence, aside from his own affidavit, supporting this allegation.

[2] Parsons alleges that he had to enter the station without management approval because his direct manager intentionally attempted to avoid contact with him. Parsons, however, fails to submit any admissible evidence, aside from his own deposition, to support his belief that the manager intentionally avoided him.

[3] Parsons alleges that the details of the investigation were common knowledge among the employees of the station. He also alleges that FedEx shared the details of the investigation with people outside the station. He has not, however, submitted any admissible evidence, aside from his own affidavit, supporting these allegations. Parsons' affidavit relies on hearsay and fails to set forth the hearsay statements with sufficient specificity to show a genuine issue for trial.

3

The DEX 03 code indicates the package is undeliverable due to a customer addressing error. FedEx determined that this code was incorrectly entered on twenty-two of the twenty-six returned packages. It again placed Parsons on paid leave.

During the ensuing investigation, Parsons admitted to placing the DEX 03 code on eleven packages he had not attempted to deliver. Parsons understood he was to use that code only when a package has an incorrect address.

FedEx terminated Parsons on March 20, 2006. It asserts that it did so because Parsons falsified company documents. This termination occurred after Parsons had filed additional EEO complaints and sought legal counsel.

On February 23, 2006, Parsons filed a complaint in the United States District Court for the Eastern District of Kentucky. On December 28, 2007, FedEx filed a motion for summary judgment. The district court granted FedEx's motion for summary judgment and dismissed the case with prejudice. The district court dismissed Parsons' motion for reconsideration on November 21, 2008. Parsons filed a timely appeal.

## Discussion

### A. Jurisdiction

The district court had jurisdiction in this case under 28 U.S.C. § 1332, based on diversity of citizenship and an amount in controversy exceeding $75,000.

This Court has jurisdiction over the plaintiff's appeal of the district court's final order under 28 U.S.C. § 1291. The trial court issued a final decision on defendant's motion for summary judgment on September 30, 2008, and on plaintiff's motion for reconsideration on November 21, 2008.

4

## B. Standard of Review

This Court reviews a district court's grant of summary judgment de novo. *Hinchman v. Moore*, 312 F.3d 198, 201 (6th Cir. 2002).

A party is entitled to summary judgment on a motion under Fed. R. Civ. P. 56 where the opposing party fails to show the existence of an essential element for which that party bears the burden of proof. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 322 (1986). The movant must initially show the absence of a genuine issue of material fact. *Id.* at 323.

Once the movant meets that initial burden, the "burden shifts to the nonmoving party [to] set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and submit admissible evidence supporting its position. *Celotex*, *supra*, 477 U.S. at 324.

In deciding a motion for summary judgment, a court accepts the opponent's evidence as true and construes all evidence in the opponent's favor. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992). The movant can prevail only if the materials offered in support of the motion show there is no genuine issue of a material fact. *Celotex*, *supra*, 477 U.S. at 323.

## C. Procedural Issues

Parsons argues that the district court erred in only considering the evidence referenced in the parties' motions before granting Fedex's motion for summary judgment. He contends that a district court must consider all the evidence that exists in record before making a summary judgment determination. FedEx asserts that this is an incorrect reading of Fed. R. Civ. P. 56. We agree with FedEx.

5

A district court need only consider the evidence presented to it when considering a motion for summary judgment, regardless of whether other potentially relevant evidence exists somewhere in the record. *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 379 (6th Cir. 2007). A district court has no "'duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'" *Id.* (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 916 n.7 (5th Cir.1992)). Thus, "[r]ule 56 allocates that duty to the opponent of the motion, who is required to point out the evidence, albeit evidence that is already in the record, that creates an issue of fact." *Williamson, supra,* 481 F.3d at 379 (quoting *Skotak*, *supra*, 953 F.2d at 916 n.7).

Parsons alleges that the 2007 revision of Rule 56 mandates district court consideration of Rule 26 initial disclosures. Parsons is correct that Rule 56 now requires us to consider both "discovery and disclosure materials." Fed. R. Civ. P. 56 (c) (2009) ("The judgment sought shall be rendered if the *pleadings, the discovery and disclosure materials* on file, and any affidavits show that there is no genuine issue as to any material fact") (emphasis added).[4]

We decline, however, to accept Parsons' second invitation to hold that this amendment requires district courts to search the record for relevant evidence, including that contained in disclosure materials. The words "on file" do not require the court to comb the record for evidence. *See Williamson*, *supra*, 481 F.3d at 379. The fact that disclosure materials are now included in Rule 56 does not change that.

We find, therefore, that the district court did not err in only considering the evidence placed before it by the parties on the motion for summary judgment.

---

[4] Before the 2007 amendments, Rule 56(c) did not include "disclosure materials" in its list of materials a court could consider in ruling on an summary judgment motion.

## D. Substantive Claims

### 1. Defamation

In West Virginia,[5] the elements of defamation are: "(1) defamatory statements; (2) a nonprivileged communication to a third party; (3) falsity; (4) reference to the plaintiff; (5) at least negligence on the part of the publisher; and (6) resulting injury." *Bine v. Owens*, 542 S.E.2d 842, 846 (W.Va. 2000). Summary judgment is appropriate if the nonmoving party fails to make a sufficient showing as to any one element, regardless of whether there are genuine issues of material fact regarding other elements. *Belcher v. Wal-Mart Stores, Inc.*, 568 S.E.2d 19, 26 (W.Va. 2002).

In this case, the first two elements are at issue, namely: 1) whether defendants made defamatory statements; and 2) whether those statements were made in nonprivileged communications to a third party.

The district court concluded that Parsons failed to produce sufficient evidence to support his allegations as to either element. Because we agree that Parsons failed to produce sufficient evidence to support his allegation that potentially defamatory statements were made in nonprivileged communications to third parties, we need not determine whether the statements were, in fact, defamatory.

To sustain a defamation claim, the defamatory statement must have been made "to a third party who did not have a reasonable right to know." *Bine, supra,* 542 S.E.2d at 846. "Unless the defamatory matter is communicated to a third person there has been no diminution of reputation." *Belcher, supra,* 568 S.E.2d at 27 (quoting *Crain v. Lightner,* 364 S.E.2d 778, 785 (W.Va. 1987)).

---

[5] The parties do not dispute that West Virginia substantive law applies to this case.

Parsons alleges that people told him they had heard of his prior legal use of prescribed narcotics from Sam Marcum and that Sam Marcum had heard from Brenda Hargis. He also alleges that his fellow coworkers told him that FedEx management was publicly stating that Parsons had done the things for which he was being investigated.

These statements are offered for the truth of the matter asserted and are hearsay. There is, accordingly, no admissible evidence supporting plaintiff's claim of improper disclosure of the allegedly defamatory information. We, therefore, affirm the district court on this count.

## 2. Retaliatory Discharge

The West Virginia Supreme Court distinguishes claims of retaliatory discharge claim and Intentional Infliction of Emotional Distress [IIED]:

> when the employee's distress results from the fact of his discharge-e.g., the embarrassment and financial loss stemming from the plaintiff's firing-rather than from any improper conduct on the part of the employer in effecting the discharge, then no claim for intentional infliction of emotional distress can attach. When, however, the employee's distress results from the outrageous manner by which the employer effected the discharge, the employee may recover under the tort of outrage. In other words, the wrongful discharge depends solely on the validity of the employer's motivation or reason for the discharge.

*Dzinglski v. Weirton Steel Corporation*, 445 S.E.2d 219, 226 (W.Va. 1994).

To succeed on a retaliatory discharge claim, an employee must prove by a preponderance of the evidence that: 1) "the complainant engaged in protected activity"; 2) "complainant's employer was aware of the protected activities"; 3) "complainant was subsequently discharged"; and 4) that, "absent other evidence tending to establish a retaliatory motivation . . . complainant's discharge followed his or her protected activities within such period of time that the court can infer retaliatory motivation." *Erps v. West Virginia Human Rights Comm'n*, 680 S.E.2d 371, 384-85 (W.Va. 2009).

8

Once plaintiff establishes a *prima facie* case of retaliatory discharge, the burden shifts to the defendants to rebut the presumption. *Id.* If defendants produce evidence to rebut the presumption, the burden remains with plaintiff to prove that the rationale given by the defendants was merely pretextual. *Id.* Plaintiff must demonstrate that "'the proffered reason was not the true reason for the employment decision.'" *Freeman v. Fayette County Bd. of Educ.*, 599 S.E.2d 695, 701 (W.Va. 2004) (quoting *Tex. Dep't of Comty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).

Parsons claims that FedEx fired him in retaliation for complaining about the disappearance of controlled substances from his truck, refusing to commit insurance fraud, and filing EEO complaints.[6]

FedEx came forward with evidence of a legitimate, nondiscriminatory reason for terminating the plaintiff: namely, that he – as he himself admitted – falsified company documents. The FedEx People Manual, No. 2.5, specifies that falsification of company documents may result in termination.

Parsons has failed to produce evidence sufficient to create a genuine issue of material fact as to whether FedEx's stated reason is pretextual. He simply asserts in a conclusory manner, and without a foundation in admissible evidence, that all employees misuse the codes in the same manner. Unsupported speculation cannot overcome a motion for summary judgment. Parson's claim fails for lack of proof. Therefore, we affirm the grant of summary judgment on this claim.

### 3. Intentional Infliction of Emotional Distress

To prevail on an IIED claim, a plaintiff must prove: 1) "the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency"; 2) "the

---

[6] We assume, *arguendo*, that Parsons can establish a *prima facie* case.

9

defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct"; 3) "the actions of the defendant caused the plaintiff to suffer emotional distress"; and 4) "the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it." *Hatfield v. Health Management Associates of West Virginia*, 672 S.E.2d 395, 404 (W.Va. 2004). Liability for IIED only arises if the defendant's conduct is found to be outrageous. *Dzinglski, supra*, 445 S.E.2d at 225.

Parsons contends that FedEx went beyond the proper scope of investigation, the details of the investigation were common knowledge, and a desire to punish him for reporting breaches of company policy motivated his termination.

West Virginia courts have declined to find similar conduct outrageous. *See id.* at 227(holding that defendant's conduct was not outrageous when it suspended the plaintiff with pay pending the outcome of the investigation, conducted an internal audit, interviewed company employees, prepared an internal memoranda setting forth the results of the interviews and audit, and held private meetings with plaintiff to apprise him of the allegations and afford him the opportunity to respond); *see also Hines v. Hills*, 445 S.E.2d 385, 390 (W.Va. 1994) (holding that prosecuting an employee instead of simply discharging her does not rise to level of actionable outrageousness).

Parsons asserts that the district court's reliance on *Dzinglski* is misplaced. We disagree. Parsons argues that we should disregard *Dzinglski* for the following reasons: 1) Dzinglski had been directly accused of misconduct prior to the investigation; 2) the company in *Dzinglski* had not shared details of the investigation with other employees; 3) the actions taken during the investigation in *Dzinglski* were related to the purpose of the investigation; and 4) Dzinglski did not file a formal

10

complaint within the company that the investigation was being conducted counter to corporate policy.

Parsons' first and fourth reasons are irrelevant, as they go to the rationale for an investigation (and termination), as opposed to the means of effecting the investigation. *See Hosaflook v. Consolidation Coal Co.,* 497 S.E.2d 174, 185 (W.Va. 1997). Parsons' second reason is foreclosed by his failure, as already noted, to put forth evidence other than his own conclusory and speculative allegations regarding communications to third parties.

Finally, Parsons has not provided the court with any evidence that the actions taken during the investigation in this case were less related to the purpose of the investigation than in *Dzinglski.* In fact, as the district court noted,

> Plaintiff conceded that Defendant was warranted in conducting an internal investigation regarding the opening of packages of pornographic material located in the truck. Plaintiff also admitted that Defendant has a legitimate need to investigate alleged drug use by its employees. Further, Plaintiff acknowledged that placing him on paid leave pending the investigation is consistent with company policy. Plaintiff also recognizes that transferring a driver's route in response to a customer complaint is not unreasonable. Finally, the record shows that during the investigation, Defendant interviewed employees and gave Plaintiff an opportunity to present his side of the story. (internal citations omitted).

*Parsons v. Federal Exp. Corp.,* 2008 WL 4463759, *4 (E.D.Ky. 2008).

For the foregoing reasons, and in light of *Dzinglski*, we affirm the decision of the district court that FedEx is entitled to summary judgment with regard to Parsons' intentional infliction of emotional distress claim.

## Conclusion

For the foregoing reasons, we **AFFIRM** the district court's grant of summary judgment.

11